UNITED STATES of America, Appellee,

v.

Charles J. KRALL, Appellant.

No. 87–5036.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 31, 1987.

Decided Dec. 15, 1987.

Rehearing Denied Jan. 8, 1988.

Guy G. Curtis, Imperial, Neb., for appellant.

John Ulrich, Asst. U.S. Atty., Sioux Falls, S.D., for appellee.

Before McMILLIAN, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Charles J. Krall appeals from his two-count conviction by a jury of willfully filing false income tax returns for the years 1980 and 1981 in violation of 26 U.S.C. § 7206(1) (1982).[1] On appeal, Krall argues that he did not have fair notice of the illegality of the trusts used and that his conviction therefore violates due process. Additionally, Krall contends that the district court[2] erred by (1) permitting amendment of his indictment; (2) excluding evidence of the indictment of the trust promoter; and (3) refusing to admit an affidavit of a juror which he argues demonstrates misconduct. We affirm the conviction.

In the fall of 1979, Dr. Krall, an optometrist from Mitchell, South Dakota, attended an estate planning seminar. At this seminar, Krall learned how to create a "common law trust" to "avoid probate, reduce or eliminate taxes, and secure assets for estate planning."

On September 8, 1980, Krall paid $12,000 to Lex Terrae Company, a company owned by Lowell Anderson. For his $12,000, Krall received a "trust package" which consisted of pre-printed trust forms and the "advice and counsel" of Anderson, attorney Art Trankanos, and Don Perry, a certified public accountant. Before purchasing the trust package, Krall met with Anderson, Trankanos and Perry, who explained how the trusts worked and assured him of their legality.

Krall and his wife signed the trust forms and "transferred" all their personal and business assets to the trusts. The "common law trust" consisted of a number of foreign trusts, created in the Turks and Caicos Islands, and domestic trusts. Bank

1. Title 26 U.S.C. § 7206(1) provides in part:
    Any person who—
    (1) Willfully makes and subscribes any return * * * which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter * * * shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5000, or imprisoned not more than three years, or both, together with costs of prosecution.

2. The Honorable John B. Jones, United States District Judge for the District of South Dakota, Southern Division.

accounts were established in the trust names in Plentywood, Montana.

After establishing the "trusts" and corresponding bank accounts, Krall continued to earn money from his optometry business.[3] However, all the receipts were deposited in the trust bank accounts. Checks were written out of these accounts to pay both business and personal expenses. The checks were signed in the trust name, with a rubber stamp facsimile. Neither Dr. Krall's name nor signature appeared on any of the checks.

Dr. Krall retained Don Perry in 1980 and 1981 to prepare both his 1040 individual tax returns and trust tax returns. Perry prepared the returns and instructed Krall how to file them. Krall signed and mailed his 1980 and 1981 individual income tax returns, reporting only income he received as "manager" of the "Professional Centre trust."[4] The remaining income, substantially all the receipts of Krall's optometry business, was reported on various trust returns. Perry instructed Krall to mail the trust returns to the trustee's office in the Turk and Caicos Islands for signature and filing. Krall mailed the returns and assumed they were properly filed. However, with the exception of a 1980 U.S. fiduciary tax return for one of the domestic trusts, none of the other trust returns were ever filed.[5] After 1981, Krall did not file individual tax returns.

Krall's 1980 and 1981 tax returns were selected for civil audit. He received an audit letter, which contained routine requests for information. Krall responded, by letter, stating he could not be involved in the examination of his tax returns, that the I.R.S. was lawless and had no jurisdiction over him. The matter was then referred to the I.R.S. Criminal Division for investigation and prosecution. Krall was convicted of filing false tax returns for the years 1980 and 1981 and received a five-

year prison sentence, all but two years of which were suspended on the condition that Krall pay the court costs of his appointed standby counsel, file tax returns and pay income taxes for the years 1980 through 1986. Krall was also ordered to pay the costs of prosecution.

On appeal, Krall first argues that at the time the trusts were created in September of 1980, there was no law regarding the illegality of the trusts. He contends that he had no notice the trusts were illegal and his conviction therefore violates due process. Krall relies on *United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir.1983), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984).

Krall's reliance on *Dahlstrom, supra,* is misplaced *Dahlstrom* involved a tax shelter program that instructed those who purchased memberships how to create foreign trust organizations (FTO's) to reduce their taxable income. On the dates alleged in the indictment there was no statute that expressly prohibited the type of shelter promoted by the defendants nor was there any case law holding that defendants' scheme lacked economic substance for tax purposes. The Ninth Circuit reversed the defendants' conviction of aiding and abetting the preparation of fraudulent income tax returns under 26 U.S.C. § 7206(2) (1982) emphasizing that "[d]ue process requires that a person be given fair notice as to what constitutes illegal conduct so that he may conform his conduct to the requirements of law." *Id.* at 1427. The Ninth Circuit has rejected the argument that *Dahlstrom* stands for the proposition that when the legality of a tax shelter is unsettled by clearly relevant precedent an indictment must be dismissed. *See United States v. Schulman*, 817 F.2d 1355 (9th Cir.), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 362, 98 L.Ed.2d —— (1987). In *Schulman,* the court noted that *Dahlst-*

---

3. Krall also earned money from other sources, including income from rental properties and the sale of stoves. However, the substantial portion of his income was from his optometry practice.

4. In 1980, Krall reported taxable income of $(2,155) and paid taxes of $393. In 1981, Krall

reported taxable income of $7,911 and paid taxes of $2,431.

5. The trust had a net loss of $10,496; accordingly no tax was paid.

*rom* should be read as a case barring the "[p]rosecution for *advocacy* of a tax shelter program in the absence of any evidence of a specific intent to violate the law" because such prosecution is "offensive to the first and fifth amendments." 817 F.2d at 1359 (emphasis added). *See also United States v. Russell,* 804 F.2d 571, 576 (9th Cir.1986) (Ferguson, J., concurring) (*Dahlstrom* "was primarily a First Amendment case involving pure advocacy"); *United States v. Crooks,* 804 F.2d 1441, 1449 (9th Cir.1986) (distinguishing *Dahlstrom*), *modified on other grounds,* 826 F.2d 4 (9th Cir.1987).

■ Of course, even in a case involving more than mere advocacy, the inquiry must be whether the law clearly prohibited the conduct alleged in the indictment. If it is clear beyond any doubt that a scheme is illegal under established principles of tax law, then participants have fair notice of its illegality even if no appellate court has explicitly so ruled. *United States v. Ingredient Technology Corp.,* 698 F.2d 88, 96 (2d Cir.), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). *See also Russell,* 804 F.2d at 575. The law is well settled that sham transactions are illegal; the true nature of a transaction may not "be disguised by mere formalisms which exist solely to alter tax liabilities." *Commissioner v. Court Holding Co.,* 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945). As this court has recognized, income is taxed to the person or entity that in fact earns the income. *Vnuk v. Commissioner,* 621 F.2d 1318, 1320 (8th Cir.1980). The Supreme Court first announced this rule in 1930 in *Lucas v. Earl,* 281 U.S. 111, 114–15, 50 S.Ct. 241, 241, 74 L.Ed. 731 (1930), and has often repeated it. *See, e.g., United States v. Basye,* 410 U.S. 441, 450, 93 S.Ct. 1080, 1086, 35 L.Ed.2d 412 (1973) ("The principle of *Lucas v. Earl,* that he who earns income may not avoid taxation through anticipatory arrangements no matter how clever or subtle * * * stands today as a cornerstone of our graduated income tax system."); *Commissioner v. Culbertson,* 337 U.S. 733, 739–40, 69 S.Ct. 1210, 1212–13, 93 L.Ed. 1659 (1949) (*citing* "the

first principle of income taxation: that income must be taxed to him who earns it.").

■ In this case it is clear the alleged trusts were shams; Krall exercised the same dominion and control over the corpus of these trusts and the income arising therefrom as he had before the trust agreements were executed. *See Paster v. Commissioner,* 245 F.2d 381 (8th Cir.) *cert. denied,* 355 U.S. 876, 78 S.Ct. 139, 2 L.Ed. 2d 108 (1957); *see also* 26 I.R.C. §§ 671–677 (1986). To avoid taxation, Krall attempted to assign his earned income to the various trusts. Although the precise "foreign trust" arrangement used by Krall had not yet been declared illegal, there is no doubt the scheme violated well established principles of tax law. Accordingly, Krall's argument that his conviction violates due process is without merit.

■ Krall makes numerous other allegations of error, none of which we find persuasive. It is alleged that the district court erred in allowing the government to amend Krall's indictment. Count I of the indictment, as returned by the grand jury essentially stated that Krall had filed a Form 1040 containing information that "he did not believe to be true and correct as to every material matter." Specifically, the indictment alleged that Krall violated 26 U.S.C. § 7206(1) by reporting "taxable income" on line 34, page 2, of $(2,155) on his 1980 tax return when he knew his correct "adjusted gross income" was $24,291.16. Count II contained identical language with different amounts and year of offense. The district court permitted the government to amend the indictment, changing the words "adjusted gross income" to "taxable income."[6] Krall contends this change related to a substantive element of the offense and therefore should not have been permitted. We reject his argument. It is obvious both the terms "adjusted gross income" and "taxable income" are alleged

6. The district court also permitted the government to amend the indictment changing the amount of "correct tax" from $6,472.60 to $6,050.68. Krall does not dispute that this change was correctly permitted.

in the indictment to refer to the same line of Krall's tax return, line 34, the line for reporting taxable income. The amendment was simply to correct this obvious misstatement of this line of the return. The amendment clarified and corrected but did not change the substance of the indictment. *United States v. Powers,* 572 F.2d 146, 153 (8th Cir.1978). Moreover, we do not perceive any prejudice to the defendant in permitting this amendment. *See State v. Burnett,* 582 F.2d 436, 438 (8th Cir.1976). Adjusted gross income is defined generally, as gross income minus business deductions. Taxable income is defined, generally, as adjusted gross income minus certain personal deductions. The evidence in this case demonstrates Krall omitted reporting and paying tax on large amounts of income. It follows that if Krall omitted income on his Form 1040, misstatements of adjusted gross income would necessarily result in misstatements of taxable income. It is also true that the elements of the offense were unchanged by the amendments and Krall knew of the amendments well in advance of trial.

Additionally, Krall argues the district court erred in excluding evidence of the indictment of the trust promoter, Lowell Anderson. Anderson, Trankanos and Perry, along with others involved in the promotion and sale of "common law trusts," were indicted and charged with conspiracy and various violations of the Internal Revenue Code. The charges were based, in large part, on the sale and promotion of these common law trusts. The indictment alleged, *inter alia,* that the defendants induced individuals to purchase trusts by means of "false, fraudulent and misleading representations." Krall sought to introduce this indictment to show he was a "victim" of the Anderson conspiracy and therefore lacked the requisite willful intent

necessary to violate § 7206(1). The trial court excluded this evidence as irrelevant after an extensive offer of proof. Absent a clear showing of an abuse of discretion, a district court's determination regarding the inadmissibility of evidence will not be disturbed on appeal. *Brewer v. Jeep Corp.,* 724 F.2d 653, 657 (8th Cir.1983); *United States v. Clifford,* 640 F.2d 150, 152–153 (8th Cir.1981). Krall was permitted to introduce evidence that he received and relied on tax information from Anderson, Trankanos, and Perry. Krall was not one of the buyers of the trusts referred to in the Anderson indictment. For these reasons, we do not believe the district court abused its discretion in excluding the Anderson indictment.

Finally, Krall contends the district court abused its discretion in refusing to receive in evidence, in considering the motion for new trial, an affidavit of a juror. After the verdict was returned, Krall offered the affidavit of one of the jurors who stated that she believed Krall was innocent but voted for conviction, fearing an I.R.S. investigation if she did not. The district court ruled the affidavit inadmissible under Fed.R. Evid. 606(b) [7] and denied Krall's motion for a new trial.

To overturn a verdict on proof of jury misconduct, Krall must (1) produce evidence which is not barred by the rule of juror incompetency and (2) produce evidence sufficient to prove grounds recognized as adequate to overturn the verdict. *United States v. Eagle,* 539 F.2d at 1166, 1169–70 (8th Cir.1976), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977). Krall argues that this evidence of jury misconduct is competent. Rule 606(b) generally prohibits a juror from impeaching his or her verdict. However, a juror may testify to extraneous information or

7. Fed.R.Evid. 606(b) provides:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

**716**

improper influence in the jury room. *Scogin v. Century Fitness, Inc.*, 780 F.2d 1316, 1318 (8th Cir.1985); Fed.R.Evid. 606(b). Krall concedes the jurors' fear of I.R.S. retaliation does not fall within the "outside influence" exception of Rule 606(b), but argues that it qualifies as "extraneous prejudicial information" which should have been considered by the district court.

Several examples of extraneous influence were cataloged by the Third Circuit in *Government of Virgin Islands v. Gereau*, 523 F.2d 140 (3d Cir.1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976), including publicity and extra-record evidence reaching the jury room, and communication or contacts between jurors and litigants, the court, or other third parties. Such objective events or incidents have been distinguished from juror testimony regarding possible subjective prejudices or improper motives of individual jurors, which numerous courts and commentators have held to be within the rule rather than the exception of 606(b). *Martinez v. Food City, Inc.*, 658 F.2d 369, 373 (5th Cir.1981), *citing* 3 Weinstein *Evidence* § 606[4] at 606–28 (1978), and our decisions in *Smith v. Brewer*, 577 F.2d 466 (8th Cir.), *aff'g* 444 F.Supp. 482 (S.D.Iowa), *cert. denied*, 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978); and *Poches v. J.J. Newberry*, 549 F.2d 1166 (8th Cir.1977).

■ The affidavit of the juror in this case does not fall within the exception for objective events or incidents. A juror's fear of I.R.S. retaliation necessarily goes to the juror's own mental process. The verdict of a jury may not be impeached by evidence of the thought processes and undisclosed subjective prejudices of individual jurors who concurred in the verdict. *United States v. Eagle*, 539 F.2d at 1169–71. The proper time to discover this type of influence is when the jury is selected and peremptory challenges are available to the attorney. *See United States v. Duzac*, 622 F.2d 911, 913 (5th Cir.) *cert. denied*, 449 U.S. 1012, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980); *Martinez*, 658 F.2d at 374. We conclude that the district court properly ruled that the juror's affidavit was inadmissible and denied Krall's new trial motion.

It follows that Krall's request that this court accept this evidence and order a new trial must be rejected.

The judgment of the district court is affirmed.