**UNITED STATES of America, Appellee,**

v.

**Gary CHEYENNE, Appellant.**

**No. 87–5280.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1988.
Decided Aug. 26, 1988.

G. Verne Goodsell, Rapid City, S.D., for appellant.

Robert A. Mandel, Asst. U.S. Atty., Rapid City, S.D., for appellee.

Before ARNOLD, Circuit Judge, ROSS and TIMBERS,* Senior Circuit Judges.

ARNOLD, Circuit Judge.

Gary Cheyenne appeals from his conviction under 18 U.S.C. §§ 1111 and 1153 for second-degree murder. The only issue on appeal involves the jury's unauthorized use of a pocket dictionary during its deliberations. We find no abuse of discretion in the District Court's[1] determination that this improper jury conduct did not affect Cheyenne's substantial rights, and so we affirm.

Cheyenne was indicted for first-degree murder in the killing of Leland Ten Fingers on the Pine Ridge Indian Reservation. Leland Ten Fingers had been killed by a blow to his skull from a car jack, and his remains were discovered in a shallow grave ten months later. The chief prosecution witness was Tom Cheyenne, Gary's brother, who testified that Gary had struck Leland Ten Fingers with the jack, and that the two brothers then attempted to hide the body. At trial, Gary Cheyenne's defense was that his brother Tom had killed Leland Ten Fingers, and that he (Gary) had only participated in concealing the body. The jury convicted Gary Cheyenne on the lesser included charge of second-degree murder.

After the verdict, defense counsel received information that some members of the jury had consulted a pocket dictionary during their deliberations. (One of the jurors, unknown to counsel or the District Court, had taken a dictionary into the jury room.) The defense moved for a new trial on the ground of jury misconduct. After an evidentiary hearing at which the jurors were questioned about the use of the dictionary, the District Court found that some jurors had used the dictionary to define the words "callous" and "wanton," and that other jurors were not even aware of the presence of the dictionary. The District Court concluded that the improper use of the dictionary did not rise to the status of prejudicial error, and so it denied Cheyenne's motion for a new trial.

On appeal, Cheyenne argues that the jury's use of the dictionary amounted to consideration of extra-record evidence, which creates a presumption of prejudicial effect, citing *Osborne v. United States*, 351 F.2d 111, 117 (8th Cir.1965). Cheyenne also argues that, because counsel must participate in the preparation of jury instructions, the jury's self-instruction on the meaning of words in the instruction defining the elements of second-degree murder denied Cheyenne his Sixth Amendment

---

* The Hon. William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

1. The Hon. Richard H. Battey, United States District Judge for the District of South Dakota.

right to counsel. The defense's theory incorrectly equates the definition of a legal term with evidence relating to the facts under deliberation. Unlike *Osborne,* this case does not involve a jury's improper consideration of material bearing on the defendant or the acts alleged in the indictment. Definitions of words like "callous" and "wanton" are not presented through witnesses at trial, nor are they factual assertions subject to cross-examination. This distinction between evidence of fact and definition of law reflects the distinct functions of jury and judge in criminal trials. Where, as in *Osborne,* the jury considers factual evidence not developed at trial, the error is presumptively prejudicial because the jury is the final arbiter of factual disputes. Where, as in this case, the jury simply supplements the court's instructions of law with definitions culled from a dictionary, it remains within the province of the judge to determine whether this conduct distorted the jury's understanding of the law to the prejudice of the defendant. See *United States v. Griffith,* 756 F.2d 1244, 1252 (6th Cir.), *cert. denied,* 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985). The determination of the trial court should be reviewed only for abuse of discretion. *Id.*

■ In this case, the District Court properly conducted an extensive hearing to determine the effect that the dictionary had on the jury's deliberations. The testimony of the jurors justifies the Court's findings that the dictionary was used sparingly, and that some of the jurors were unaware of its use. Nor is there any apparent prejudice in the use of the dictionary definitions of the words "callous" and "wanton" to supplement the Court's instructions to the jury. The juror's *Webster Handy College Dictionary* defines "callous" as

   1. hard; hardened. 2. unfeeling; unkind

and "wanton" as

   1. unrestrained; wild; reckless. 2. heartless; malicious. 3. dissolute.

Cheyenne argues that the definition of "callous" as "unkind" might persuade a juror who felt that an act of manslaughter was unkind to vote for a conviction for second-degree murder. This argument might have merit if "callousness" were a sufficient and otherwise undefined element of the crime of second-degree murder. In the context of the Court's instructions, however, the words "callous" and "wanton" are themselves only minor parts of the court's explanation of "malice aforethought" as

> ... an intent, at the time of a killing, willfully to take the life of a human being, or an intent willfully to act in callous and wanton disregard of the consequences to human life....

(Instruction No. 13, Appellant's Addendum at A–6.) When any of the Webster's definitions is substituted for "callous" and "wanton," the legally correct meaning of the overall concept of "malice aforethought" is not appreciably altered.[2]

We give substantial weight to the trial court's appraisal of the prejudicial effects of extraneous information on the jury, since the trial judge has the advantages of close observation of the jurors and intimate familiarity with the issues at trial. See *United States v. Steele,* 785 F.2d 743, 746–47 (9th Cir.1986); *United States v. Bagnariol,* 665 F.2d 877, 885 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). Our independent review of the record does not suggest any reason to disturb the District Court's finding that the jury's improper use of a dictionary did not prejudice the defendant. Accordingly, we affirm Gary Cheyenne's conviction.

---

**2.** Furthermore, the absence of malice aforethought was not an issue at trial. The conflicting accounts of Gary and Tom Cheyenne both indicate that Leland Ten Fingers was the victim of a deliberate murder. The only real dispute was whether Gary or Tom actually committed the killing. The jury's resolution of this dispute had nothing to do with the nuances of "callous" and "wanton." Further, it is entirely fanciful to suppose that any juror could have regarded the victim's killing as merely "unkind."