**UNITED STATES of America, Appellant,**

v.

**Arthur A. BLUMEYER, III, and John W. Peckham, Jr., Appellees.**

No. 94–3671.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1995.

Decided Aug. 4, 1995.

Rehearing and Suggestions for Rehearing En Banc Denied Oct. 11, 1995.*

* McMillian and Beam, Circuit Judges, would grant the suggestions for rehearing en banc.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

BOWMAN, Circuit Judge.

The United States appeals an order of the District Court granting a new trial to Arthur Blumeyer and John Peckham on the basis of a juror's misconduct. We reverse, reinstate the jury's verdicts, and remand for sentencing.

After a four-week trial ending in six days of deliberations, a jury convicted Blumeyer and Peckham of wire fraud in violation of 18 U.S.C. § 1343 (1988), mail fraud in violation of 18 U.S.C. § 1341, and conspiracy to commit wire fraud and mail fraud in violation of 18 U.S.C. § 371. The jury also convicted Blumeyer of multiple counts of money laundering in violation of 18 U.S.C. § 1956. Upon the request of both defendants, the District Court conducted a poll of jurors. All of the jurors confirmed the verdicts. Juror 9, however, "paused for a long moment before announcing her agreement with the verdicts against Mr. Peckham, and she appeared close to tears," but "she clearly stated that the announced convictions were her 'true and correct' verdicts." *United States v. Blumeyer,* No. 4:93CR68, Mem. & Order at 3 (E.D.Mo. Aug. 30, 1994) (Mem. & Order).

▇▇▇ The following day Juror 9 called Peckham to tell him that she regretted the verdicts against him. Peckham asked Juror 9 to contact his attorney, and Peckham's attorney notified the District Court of Juror 9's communications. On February 15, 1994, the court interviewed Juror 9. During the interview, Peckham's attorney asked Juror 9 whether any juror had consulted an outside source during the deliberations. Juror 9 said that the jury foreman had asked "an attorney friend of his, just on a question of law" and that the foreman mentioned the contact in the context of a discussion among the jurors.[1]

---

Audrey Goldstein Fleissing, St. Louis, MO, argued, for appellant. In addition the names of Edward L. Dowd, Jr. (as U.S. Atty.), and Patricia A. McGarry, St. Louis, MO, appear on the brief of the appellant.

Lee Lawless, St. Louis, MO, argued, for appellee Peckham.

N. Stephen Marshall, St. Louis, MO, for appellee Blumeyer.

1. Blumeyer and Peckham, along with the District Court, draw inferences regarding the subject of

the foreman's inquiry from the discussion occurring in the jury room at the time the foreman

Sealed Transcript of Feb. 15, 1994, Interview at 12. She could not remember what the foreman had said about the contact and noted, "I didn't pay a lot of attention to him anyway." *Id.* Juror 9 also said that when the foreman started discussing his contact with an attorney some of the jurors were getting coffee and not listening to the fore- · man. Additionally, some of the jurors who were listening were apparently upset by the foreman's contact with an attorney and admonished the foreman for violating the District Court's instructions. Based on this interview the District Court granted Peckham's motion for leave to interview the other petit jurors.

Jurors 10, 11, and 12 largely corroborated Juror 9's statements regarding the foreman's contact with an attorney. Like Juror 9, they did not remember the subject of the question the foreman said he had posed. Juror 4's memory of the foreman's statement was similar to that of Jurors 10, 11, and 12 except that she believed that the comment related to the legality of starting a corporation with insufficient capital. Juror 4, however, also said at least ten times that she really couldn't remember the subject of the question. In response to a query from the court regarding the level of her certainty, she replied, "I'm uncertain about what it was that [the foreman] checked on [with the attorney]." Sealed Transcript of June 10, 1994 Hearing at 14. Jurors 4 and 11 described the subject of the foreman's conversation with the attorney as a "hypothetical question" or "things in general . . . [n]ot specific to the case." *Id.* at 26, 15. Juror 3, while recalling that the foreman mentioned a conversation with an attorney, could not remember whether the foreman's comment related to the case at all. Jurors 1, 2, 5, 6, and 8 did not remember the foreman discussing a conversation with an

attorney at any time during the deliberations. The court interviewed the foreman on two separate occasions, and the foreman denied having discussed with an attorney any of the substantive issues in the case, either directly or through hypothetical questions.

■ After interviewing all of the jurors, the court found "the Foreperson posed a hypothetical question to an attorney about substantive issues in the case" that "were material to Defendant's guilt or innocence." Mem. & Order at 10, 15. The court declined to characterize the "substantive issues" as either legal or factual. *Id.* at 13 n. 4. The court further found that the admonitions of the other jurors "prevented the Foreperson from relating fully the information he had received." *Id.* at 10. Based on these findings, the court held that the law required it to presume that the contact was prejudicial to the defendants. *Id.* at 13. The court concluded that the government had not rebutted the presumption and granted Blumeyer's and Peckham's motions for a new trial. We will reverse a district court's decision to grant a new trial only when that decision constitutes an abuse of discretion. *United States v. Estrada,* 45 F.3d 1215, 1225 (8th Cir.1995), *petition for cert. filed,* No. 94–8972 (April 24, 1995). A discretionary decision based on a clearly erroneous finding of fact constitutes an abuse of the trial court's discretion. *Waible v. McDonald's Corp.,* 935 F.2d 924, 926 (8th Cir.1991) (per curiam).

■ The District Court's order relies on *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954), and *United States v. Bassler,* 651 F.2d 600, 603 (8th Cir.), *cert. denied,* 454 U.S. 944, 102 S.Ct. 485, 70 L.Ed.2d 254 (1981), and *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 305 (1982), as authority for imposing the rebuttable presumption of prejudice in

---

revealed his improper contact. Juror 9's testimony regarding that discussion clearly falls within the proscription of Federal Rule of Evidence 606(b). Rule 606(b) bars the use of testimony concerning a juror's mental process, and we will not consider the portions of Juror 9's testimony that describe her mental process or the deliberations of other jurors. Evidentiary decisions of a district court

ordinarily will not be disturbed unless the decision constitutes an abuse of discretion. *United States v. Ballew,* 40 F.3d 936, 941 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1813, 131 L.Ed.2d 737 (1995). To the extent that the District Court used testimony barred by Rule 606(b) to make its findings of fact, the court abused its discretion.

this case. In *Remmer*, the Supreme Court stated that

> [i]n a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial.... The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer*, 347 U.S. at 229, 74 S.Ct. at 451. The presumption of prejudice does not apply unless the extrinsic contact relates to "factual evidence not developed at trial." *United States v. Cheyenne*, 855 F.2d 566, 568 (8th Cir.1988). Extrinsic contacts that relate to the facts of a case are presumptively prejudicial "because the jury is the final arbiter of factual disputes." *Id.*

■ The government argues that in this case there is no evidence to support the District Court's finding of an extrinsic contact on a substantive matter in the case, either factual or legal. We agree. The juror interviews revealed absolutely nothing that would warrant a finding that the improper contact between the foreman and an attorney related to a substantive issue in the case. It is telling that the District Court made no firm finding of fact regarding the subject matter of the hypothetical question posed to the attorney. At most, the testimony of the jurors tends to show that the foreman contacted an attorney and asked a hypothetical question about something. One juror described the question as a question of law. The District Court's finding that "the Foreperson posed a hypothetical question to an attorney about substantive issues in the case," is unsupported by the testimony of the jurors, which is the only evidence in the record on this issue. We hold that the court's finding is clearly erroneous, and thus the factual predicate necessary for the court to presume prejudice was absent.

■ Even if the extrinsic contact related to a substantive issue in the case, the government argues that the improper contact concerned only a point of law. In response to the government's argument, Blumeyer and Peckham argue that the "use of the labels 'legal' or 'factual' is not helpful" in determining whether an extraneous contact is presumptively prejudicial. Blumeyer's Brief at 31; Peckham's Brief at 33. This Court, however, has found the distinction between factual and legal issues to be legally significant as well as helpful. *See Cheyenne*, 855 F.2d at 568. The District Court recognized that *Cheyenne* supports the government's position, Mem. & Order at 13 n. 4, but refused to apply *Cheyenne* because the court disagreed with this Court's reasoning in that decision. We are bound, as is the District Court, by the prior decisions of this Court, *United States v. Rodamaker*, 56 F.3d 898, 903 (8th Cir.1995), and we must either apply *Cheyenne* or distinguish it from the instant case. We agree with the government that *Cheyenne* applies to this case.

The government argues that the only available evidence of the foreman's improper contact with an attorney shows that the contact related to a question, or questions, of law. Blumeyer and Peckham, on the other hand, contend that the extrinsic contact relates to factual issues to be decided by the jury and, therefore, forms the proper predicate for the invocation of the presumption of prejudice. They cite the District Court's finding that the contact related to "substantive issues in the case," Mem. & Order at 13, in support of their argument that the contact was related to factual issues. We note, however, that the District Court specifically refused to "classify the extrinsic information obtained by the Foreperson as clearly factual or legal in nature." Mem. & Order at 13 n. 4.

■ Having reviewed the record, we conclude that the only evidence of the extraneous information presented to the jury clearly indicates that the information, if it related at all to a substantive issue in the case, related to a point of law. In *Cheyenne* a juror consulted a dictionary to clarify words used in the trial court's instructions. *Cheyenne*, 855 F.2d at 567. This Court noted that not

all of the jurors were aware of the presence of the dictionary. *Id.* We held that the extraneous information obtained by the jury was not prejudicial because it related to the definition of a legal term rather than "the facts under deliberation," and because the use of the dictionary did "not involve a jury's improper consideration of material bearing on the defendant or the acts alleged in the indictment." *Id.* at 568. In the instant case, the information obtained from the attorney also did not bear on the defendant or on the acts alleged in the indictment. The record contains no evidence that would tend to show that the attorney consulted by the foreman had any knowledge of the defendants or the crimes charged in the indictment. Even viewed in the light most favorable to Blumeyer and Peckham, the testimony of the various jurors shows only that the foreman's question was intended to clarify a point of law, much as the juror's use of the dictionary in *Cheyenne* was intended to clarify the trial court's legal instructions. Any question regarding the minimum start-up-capital requirements for corporations was a question that the jury was not required to answer to reach its verdicts. The trial court thus should not have presumed that the improper contact was prejudicial. When an extrinsic contact relates to legal issues, the presumption of prejudice does not apply, *Estrada,* 45 F.3d at 1226, and it is the defendant's burden to produce evidence not barred by Rule 606(b) that is sufficient to prove the actual prejudice necessary to justify a new trial, *id.* at 1225. *See also United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508 (1993) (describing "ultimate inquiry" as "Did the intrusion affect the jury's deliberations and thereby its verdict?").

■ Blumeyer and Peckham have not presented evidence sufficient to prove that the foreman's improper contact resulted in any actual prejudice. The facts of this case are closely analogous to the facts of *Estrada.* In *Estrada,* a juror contacted a county public defender and asked whether it was legal for police officers to execute a search warrant without having the document in their posses-

sion and without showing the warrant to occupants of the building to be searched. We held that this contact was not prejudicial, in part because the public defender had no knowledge of the facts of the case. *Estrada,* 45 F.3d at 1226–27. Similarly, there is no showing here that the attorney consulted by the foreman had any knowledge of the facts pertaining to the charges against Blumeyer and Peckham. Moreover, as in *Estrada,* the District Court here instructed the jury not to consider extraneous information that might come to the jury's attention outside of the trial proceedings. It must be presumed that jurors follow such instructions. *Id.* at 1227 (citing *Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n.9, 85 L.Ed.2d 344 (1985)). In this case, we need not presume that such instructions were followed; the jurors' admonition of the foreman makes it clear that they were. Given the evidence Blumeyer and Peckham have presented, we conclude that they have not proven any actual prejudice from the foreman's improper comment.

■ Finally, even if the presumption of prejudice had been warranted in the instant case, we note that the government overcame the presumption by proving that the contact was harmless beyond a reasonable doubt. The District Court correctly stated the objective test that is used to assess whether the extraneous information would likely affect a typical juror when the government must overcome a presumption of prejudice. Mem. & Order at 12 (citing *United States v. Simpson,* 950 F.2d 1519, 1522 (10th Cir. 1991)). The relevant considerations include (1) whether the extrinsic evidence was received by the jury and the manner in which it was received; (2) whether it was available to the jury for a lengthy period of time; (3) whether it was discussed and considered extensively by the jury; (4) whether it was introduced before a verdict was reached and, if so, at what point during the deliberations was it introduced; and (5) whether it was reasonably likely to affect the verdict, considering the strength of the government's case and whether it outweighed any possible prejudice caused by the extrinsic evidence. *See*

Mem. & Order at 12 (citing *Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th Cir.1986), and *Osborne v. United States*, 351 F.2d 111, 118 (8th Cir.1965)).

 Despite having correctly stated the test and the relevant factors, the District Court failed to weigh adequately those factors. The court held that "the weight of evidence is merely one factor to consider. Other relevant factors include the fact that the extraneous information was material to Defendants' guilt or innocence, that it came from a lawyer, and that it was available at least to the Foreperson throughout most of the deliberation." Mem. & Order at 14–15. The court's memorandum and order gives no indication that it actually assessed the strength of the government's case and balanced it against the factors tending to show prejudice. Having reviewed the record, we conclude that the evidence of Blumeyer's and Peckham's guilt was overwhelming and outweighs any prejudice that could have been caused by the foreman's improper contact with an attorney.

We also note the District Court's apparent failure to consider other relevant factors that weigh in favor of a finding of harmlessness. At worst the extrinsic information was received by less than half of the jurors and was not discussed or considered by the jury at all. Moreover, the District Court's finding that the contact was material to the defendants' guilt or innocence is clearly erroneous for the same reason that the finding that the information related to a substantive issue in the case is clearly erroneous. *See supra* at 1016. No testimony regarding the improper contact suggests that the contact related to the facts of the case. In the circumstances of this case, a complete weighing of the relevant factors, including the government's overwhelming evidence of guilt, results in the inescapable conclusion that the improper contact between the foreman and a lawyer was harmless beyond a reasonable doubt. The District Court erred by concluding that the

government had not successfully rebutted the presumption of prejudice.

In sum, we hold that the District Court clearly erred in finding that the foreman's contact with an attorney related to substantive issues in the case and was thus presumptively prejudicial. Even if the extrinsic contact related to a substantive issue, it concerned only a point of law, and the court should not have presumed prejudice. We further hold that Blumeyer and Peckham have not shown that they were actually prejudiced by the contact. Alternatively, the District Court erroneously concluded that the government failed to rebut the presumption of prejudice by proving harmlessness because the court failed to weigh all of the relevant factors and improperly weighed those factors it considered.

For the foregoing reasons, we reverse the order granting Blumeyer and Peckham a new trial and reinstate the jury's verdicts. The case is remanded to the District Court for sentencing.

HENLEY, Senior Circuit Judge, dissenting.

I respectfully dissent.

As an initial matter, I agree with the majority that this case should be analyzed in accordance with *United States v. Cheyenne*, 855 F.2d 566 (8th Cir.1988). The jury's exposure, if any, to extraneous information during deliberations may well have been largely confined to that involving a legal issue at trial—the law of conspiracy. Thus, the district court may well have wrongly applied the presumption of prejudice enunciated in *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954).

In *Cheyenne*, we wrote, "where ... the jury simply supplements the court's instructions of law ... it remains within the province of the judge to determine whether this conduct distorted the jury's understanding of the law to the prejudice of the defendant." *Cheyenne*, 855 F.2d at 568; *United States v. Estrada*, 45 F.3d 1215, 1226 (8th Cir.1995). Thus, even though no presumption of prejudice arises under *Cheyenne*, courts, in their

discretion, may determine that a defendant has actually been prejudiced sufficiently to warrant a new trial. *Cheyenne,* 855 F.2d at 568.

Here, the majority determines "Blumeyer and Peckham have not presented evidence sufficient to prove that the foreman's improper contact resulted in any actual prejudice." I disagree, since I do not believe this court can better make that determination.

Determining whether actual prejudice results from an extraneous influence is not a simple black and white proposition since up to a point Fed.R.Evid. 606(b) precludes courts "from investigating the subjective effects of any extrinsic material on the jurors, whether such effects might be shown to affirm or negate the conclusion of actual prejudice...." *United States v. Bassler,* 651 F.2d 600, 603 (8th Cir.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 305 (1982). However, a determination of whether a defendant has actually been prejudiced may result from an objective inquiry by the court.[1] *See United States v. Simpson,* 950 F.2d 1519, 1522 (10th Cir.1991) ("[t]he inquiry is whether there exists a reasonable possibility that the external influence or information affected the jury"); *Bayramoglu v. Estelle,* 806 F.2d 880, 887 (9th Cir.1986) (once an extraneous influence on jury deliberations is shown, "a new trial is warranted if there is a reasonable possibility that it could have affected the verdict"); *United States v. Brantley,* 733 F.2d 1429, 1441 (11th Cir.1984) (reasonable possibility of prejudice to defendant is inquiry if jury exposed to extraneous factual information), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985); *cf. United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508 (1993) ("ultimate inquiry" is whether the intrusion "affect[ed] the jury's deliberations and thereby its verdict"); *Bassler,* 651 F.2d at 603 ("[a]ssuming *arguendo*" that the reasonable possibility test is the proper test). Not only is the inquiry objective in nature, it is also fact intensive. *See United States v. Sanders,* 962 F.2d 660, 668 (7th Cir.1992) ("[d]etermining whether a verdict was affected is a fact-driven exercise that will depend upon the circumstances of the case"); *Bayramoglu,* 806 F.2d at 887 (listing the five factors courts should consider when adjudicating extraneous influence cases).

In my view, because the inquiry into actual prejudice is both objective and fact intensive, the district court is better equipped to handle it. We have plainly acknowledged the institutional advantages district courts possess in extraneous influence cases. "We give substantial weight to the trial court's appraisal of the prejudicial effects of extraneous information on the jury, since the trial judge has the advantages of close observation of the jurors and intimate familiarity with the issues at trial." *Cheyenne,* 855 F.2d at 568; *see also Estrada,* 45 F.3d at 1226. Other courts, including the Supreme Court, have acknowledged these advantages as well. *See,*

---

1. In a post-trial proceeding Juror 9 testified that during deliberations, she and some other jurors wanted to know whether Blumeyer, alone, could be convicted of a conspiracy. She further testified that a day or two later, the foreman told her and a few other jurors that he had recently talked to an attorney and asked, hypothetically, whether only one co-defendant can be convicted of a conspiracy. In different ways, the testimony of Jurors 4, 10, 11, and 12, as well as the foreman's testimony, corroborated Juror 9's testimony.

The majority, in its footnote 1, turns a blind eye toward Juror 9's testimony, deeming it inadmissible under Fed.R.Evid. 606(b). It therefore agrees with the government that "there is no evidence to support the District Court's finding of an extrinsic contact on a substantive matter in this case." I cannot agree with this position. Juror 9's testimony, in my view, is narrowly admissible regarding "the question whether extraneous prejudicial information was improperly brought to the jury's attention, or whether any outside influence was improperly brought to bear upon any juror." Fed.R.Evid. 606(b); *see United States v. Krall,* 835 F.2d 711, 715–16 (8th Cir. 1987) ("a juror may testify to extraneous information or improper influence in the jury room"). Furthermore, since her testimony is admissible, it is clear to me that the jury's deliberations concerning a substantive issue in the case—the law of conspiracy—might have been tainted. Of course, the district court should be allowed to determine, in the first instance, whether the taint, if any, actually prejudiced appellees. *Cheyenne,* 855 F.2d at 568.

e.g., *Arizona v. Washington*, 434 U.S. 497, 512–14, 98 S.Ct. 824, 834, 54 L.Ed.2d 717 (1978) (in evaluating possible juror bias, the trial judge "is far more conversant with the factors relevant to the determination than any reviewing court can possibly be"); *United States v. Bertoli*, 40 F.3d 1384, 1393–94 (3d Cir.1994) (discussing the "compelling reasons why the trial court must be given wide latitude to assess and respond to allegations of juror misconduct"); *United States v. Sababu*, 891 F.2d 1308, 1333 (7th Cir.1989) ("[t]he district court will always be in a better position than the appellate judges to assess the probable reactions of jurors in a case over which he has presided"). Given this deferential standard, I would remand and allow the district court to make an assessment of *Cheyenne* prejudice. After all, in a case of this kind it is the trial judge who is best in position to decide and the appellate judges are about as important as honorary pallbearers.

Accordingly, instead of reversing and reinstating the jury's verdict, I would remand this case to the district court and allow it to determine, in accordance with *Cheyenne*, whether appellees were actually prejudiced by the foreman's contact with the outside attorney during deliberations.