No. 96-1386

United States of America;  *
                            *
            Appellant;      *
                            *  Appeal from the United States
      v.                    *  District Court for the
                            *  Western District of Missouri.
Everett Kyle Hall, also known   *
as Eric, also known as Shorty;  *
Roy Lee Hall; Randall Joe Hall; *
                            *
            Appellees.      *

Submitted:  May 15, 1996

Filed:  June 4, 1996

Before BOWMAN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

The district court granted defendants' motion for a new trial based on the jury foreperson's one-page affidavit stating that on more than one occasion he and other jurors overheard the judge at a bench conference discussing evidence of the defendants' involvement in other, serious, criminal activity. We remand the case to the district court to conduct an evidentiary hearing in accordance with this opinion. We retain jurisdiction in this matter, however, and if further attention by this court becomes necessary, the clerk of court will provide the parties with an accelerated briefing schedule.

I.  BACKGROUND

Three defendants, Everett Kyle Hall, Roy Lee Hall, and Randall Joe Hall, were tried by a jury and convicted of conspiracy to distribute methamphetamine and to possess methamphetamine with intent to distribute in violation of 21 U.S.C. § 846.  Everett Hall and Randall Hall were also tried and convicted of the use of a firearm during the commission of a drug-related felony in violation of 18 U.S.C. § 924(c),[1] and for possession of an unregistered silencer in violation of 26 U.S.C. §§ 5841; 5861(c), (d) and (i); and 5871.[2]

The parties appeared for sentencing on November 29, 1995.  At that time, the defense presented the court with an affidavit from the jury foreperson and made a motion for a new trial based on the affidavit.  The affidavit stated in full:

> During the course of the trial I heard the Judge's comments concerning whether there would be evidence of chop shop, prostitution and murder admitted at the trial.
>
> From these statements, I felt that the Defendant[s] were involved in more than they were on trial for.  I am also aware that the jury was apprehensive and fearful of retaliation from the Defendants or the Defendant[s'] family, so much so that some jurors took different routes to and from the courthouse during the trial.
>
> The comments relating to evidence of a chop shop, prostitution, and murder were heard on several occasions. These comments were heard by other members of the jury and were discussed by the jury panel during recesses. Discussion of the comments occurred at times when all the

---

[1]Although the defendants were convicted under the "use" prong of 924(c), the court set aside those convictions in light of <u>Bailey v. United States</u>, 114 S. Ct. 501 (1995).  The government does not appeal that decision.

[2]Before trial, the court severed two counts in the indictment against Everett Hall and Randall Hall for being felons in possession of a firearm in violation of 18 U.S.C. § 922(g); those charges apparently are still pending.

2

jurors were present and on other occasions by fewer than all jurors.

At trial, the court had made references to chop shop, prostitution, and murder in two bench conferences. Both bench conferences related to one of the court's pre-trial orders. Prior to trial, counsel for the defendants indicated that they might attempt to impeach one of the government's primary witnesses by introducing evidence that she made prior, false accusations that the defendants were involved in other crimes, including a murder. The court determined that none of the evidence relating to the alleged prior crimes would be admitted. During cross-examination of a government witness, counsel for one of the defendants appeared to tread on the court's pre-trial ruling by asking the witness if she had ever engaged in prostitution. When the government objected, the court called all counsel to the bench and warned:

> I said Monday morning that you were not to go into the
> prostitution claims . . . . We're not going into any of
> those, only the issue involved in this case . . . .
> Well, I'm telling you you're not to go into the
> prostitution [or] . . . the murder or the chop shop.

Tr. at 629-30. Shortly thereafter, during another bench conference, the court told counsel:

> Well, if you're getting--if you are wanting to offer
> evidence relative to a murder, relative to the chop shop,
> relative to the prostitution, relative to the motorcycle
> club, it's not to be gone into . . . . Well, that would
> be evidence of a murder and I'm saying that you cannot go
> into that, so your offer will be refused.

Tr. at 664-65. By all accounts, neither the court nor any lawyer intended the jury to overhear the substance of these conversations. In fact, until the affidavit came to light, no party was aware that any juror had overheard any portion of the bench conferences.

The court granted a new trial to each defendant based on the single juror affidavit without gathering any other evidence or

3

making a further investigation.  The government now appeals the district court's order.

## II. DISCUSSION

A.  Evidentiary Hearing

We review the court's decision to grant a new trial with particular caution.  Affirmance would nullify a jury trial that lasted more than a week, consumed significant judicial resources, and involved an investment of substantial time by the lawyers on all sides.  At the same time, few rights of an accused person are more fundamental or more sacred than the Sixth Amendment right to an impartial jury.  Because each of the competing interests is strong, we hesitate to reach a final decision without a complete picture of what extraneous information came before the jury.  In this case, one affidavit does not provide sufficient evidence on which to reach a fully informed decision.  Thus, it was an abuse of discretion for the court to grant the defendants' motion for a new trial absent an evidentiary hearing.

Faced with similar situations, this and other courts have consistently had the benefit of in-depth evidentiary hearings regarding the nature and effect of extraneous jury contact.  See, e.g., United States v. Blumeyer, 62 F.3d 1013, 1015 (8th Cir. 1995) (in response to allegation that a juror had consulted an outside lawyer, district court interviewed all jurors); United States v. Cheyenne, 855 F.2d 566, 567 (8th Cir. 1988) (district court conducted evidentiary hearing to question jurors about the use of a dictionary during deliberations); United States v. Martin, 740 F.2d 1352, 1357 (6th Cir. 1984) (remanding for the limited purpose of an evidentiary hearing to determine whether jurors overheard judge's comments relating to defendant's guilt spoken during bench conference), cert. denied, 472 U.S. 1029 (1995).

4

What concerns us most is the court's failure to explore the nature of the jury's exposure to extraneous, prejudicial information beyond what the single affidavit recounts. Therefore, we remand the matter to the district court to make a full factual inquiry. Once the court has a complete picture of what events transpired, it may, of course, grant a new trial based on the taint of even a single juror. United States v. Delaney, 732 F.2d 639, 643 (8th Cir. 1984) (holding that if a single juror is improperly influenced, a verdict is as unfair as if all jurors were improperly influenced).

B. Rule 606(b)

Generally, to impeach a jury verdict, "the [defendants] must (1) produce evidence which is not barred by the rule of juror incompetency and (2) produce evidence sufficient to prove grounds recognized as adequate to overturn the verdict." United States v. Krall, 834 F.2d 711, 715 (8th Cir. 1987) (citing United States v. Eagle, 539 F.2d 1166, 1169-70 (8th Cir. 1976), cert. denied, 429 U.S. 1110 (1977)). The court's first inquiry, therefore, is whether the affidavit constitutes admissible evidence under the Federal Rule of Evidence 606(b), which governs jurors' competency to testify with respect to their deliberations. The rule provides:

> **Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for those purposes.

5

Fed. R. Evid. 606(b) (emphasis added).  The advisory committee notes to the 1972 proposed rule give some insight into competing values the Rule 606(b) seeks to protect:

> The familiar rubric that a juror may not impeach his own verdict, dating from Lord Mansfield's time is a gross oversimplification.  The values sought to be promoted by excluding the evidence include freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment.  McDonald v. Pless, 238 U.S. 264 (1915).  On the other hand, simply putting verdicts beyond effective reach can only promote irregularity and injustice.  The rule is an accommodation between these competing considerations.

All but the second paragraph of the juror's affidavit falls squarely within the exception of Rule 606(b), that is, it constitutes testimony on the narrow question whether extraneous, prejudicial information was improperly brought before the jury's attention.  In substance, the affidavit reveals that at least one juror heard prejudicial information not in evidence and that the information was discussed among the jurors.  As the district court specifically stated, "the comments made by the Court during various bench conferences that related to murder, chop shops, and prostitution were not intended to be heard . . . or considered by the jury."  Order, No. 95-03020-10/03-CR-S-4, filed 1/16/96 (hereinafter "Order") at 4.  Thus, under the rule's exception, the district court properly considered this portion of the affidavit and on remand may consider other evidence that is similarly restricted to the question of what, if any, extraneous information the jury heard.

The second paragraph of the affidavit, however, contains impermissible testimony.  In the first sentence, the foreperson reveals what impact the extraneous information had on him by stating:  "From these statements, I felt that the defendant[]s were involved in more than they were on trial for."  He then goes on to expose the thought processes of the other jurors:  "I am also aware

6

that the jury was apprehensive and fearful of retaliation from the Defendants or the Defendant[s'] family, so much that some jurors took different routes to and from the courthouse during the trial."  Although it is not clear from the affidavit whether the jurors' alleged fears were independent of or dependent on the overheard information relating to "chop shop, prostitution and murder," Rule 606(b) prohibits its consideration in either case.  Therefore, the district court should not have considered those statements in the second paragraph of the affidavit in its ruling on the new trial motion.  Moreover, the court should not consider any other evidence that bears directly on the jurors' decision-making processes.

C.  Presumption of Prejudice

The court must next consider whether the admissible evidence is sufficient to overturn the jury verdict.  Certain jury contaminations are so prejudicial that they create a rebuttable presumption of prejudice. United States v. Remmer, 347 U.S. 227, 229 (1954) (presumption created by any private communication, contact, or tampering with a juror during trial about the matter pending before the jury unless made in pursuance of known rules and directions of the court).  Our court has held, however, that the presumption of prejudice does not apply unless the extrinsic contact relates to "factual evidence not developed at trial."  Cheyenne, 855 F.2d at 568 (holding no abuse of discretion for district court to deny new trial motion where jurors consulted dictionary for definitions of "callous" and "wanton").  Therefore, we do not apply the presumption of prejudice if the extraneous contact pertains to purely legal issues. Blumeyer, 62 F.3d at 1016.

In this case, the district court held that the presumption of prejudice applied.  Order at 5-6.  The government argues that the overheard comments related only to a question of law—i.e., the

judge's ruling on the admissibility of evidence.[3]  We disagree.  The comments relate to factual questions that go to the heart of the jury's role:  to weigh the relative credibility of witnesses in a case that turned almost entirely on whose version of events the jury found more credible. The jury's duty to resolve factual questions is severely impaired when it improperly receives information that besmirches the defendants' character. It is alleged that several jurors overheard mention of the defendants' connection to other crimes including murder, that one or more of those jurors transmitted the information to the full jury panel, and that jurors discussed it with each other during trial recesses.  Such conduct would certainly trigger a presumption of prejudice to the defendants.

Once the presumption is established, the burden will rest heavily with the government to establish that the extraneous juror contact was harmless to the defendants.  <u>Remmer</u>, 347 U.S. at 229.  Thus, the presumption of prejudice applies, and it will be incumbent on the government to prove that the extraneous contact was harmless beyond a reasonable doubt.  <u>See</u> <u>Blumeyer</u>, 62 F.3d at

---

[3]For example, in opposition to the defendants' motion for new trial, the government argued to the court:

> [T]he affidavit does not indicate that any comments which may have been overheard by the jury at side bar affected their verdict whatsoever.
>
> It simply doesn't say that it was considered or that it somehow inhibited or hindered the jury from following the court's instructions.  There is no indication that the jury did anything other than follow the Court's instructions and consider the evidence that was admissible.  That affidavit doesn't challenge that whatsoever.  In truth, all it says is that the jury was able to hear the Court make evidentiary rulings, which it heard, of course, from time to time throughout the course of the trial anyway.  Therefore, I think the court can deny the motion at this point and proceed to sentencing.

Hr'g Tr. at 6.

1017. We employ an "objective test . . . to assess whether the extraneous information would likely affect a typical juror." Id. The relevant considerations include: (1) whether the extrinsic evidence was received by the jury and the manner in which it was received; (2) whether it was available to the jury for a lengthy period of time; (3) whether it was discussed and considered extensively by the jury; (4) whether it was introduced before a jury verdict was reached and, if so, at what point during the deliberations; and (5) whether it was reasonably likely to affect the verdict, considering the strength of the government's case and whether the government's case outweighed any possible prejudice caused by the extrinsic evidence. Id. (citing Bayramoglu v. Estelle, 806 F.2d 880, 887 (9th Cir. 1986), and Osborne v. United States, 351 F.2d 111, 118 (8th Cir. 1965)).[4]

CONCLUSION

We remand to the district court to conduct a factual inquiry consistent with this opinion to fully determine the extent to which the jury was exposed to extraneous, prejudicial information. If that factual inquiry reveals jury taint sufficient to trigger the presumption of prejudice, a new trial is warranted unless the government can demonstrate harmlessness beyond a reasonable doubt.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

[4]The district court held that the government could not establish that the overheard comments were harmless. Order at 7. We simply note that connection to the crime of murder carries as much inherent danger as almost any imaginable reference.