United States Court of Appeals
FOR THE EIGHTH CIRCUIT
Nos. 96-1386/2930

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | Appeals from the United States |
| | * | District Court for the Western |
| v. | * | District of Missouri. |
| | * | |
| Everett Kyle Hall, Also Known as | * | |
| Eric, Also Known as Shorty; Roy Lee | * | |
| Hall; and Randall Joe Hall, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 11, 1997

Filed: July 7, 1997
_____

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The government appeals from an order granting a new trial to defendants Everett Kyle Hall, Roy Lee Hall, and Randall Joe Hall because the jury was exposed to prejudicial extrinsic matter. We find that the extrinsic matter was harmless beyond a reasonable doubt and thus reverse the order for a new trial. We remand for sentencing pursuant to the judgments of "guilty" originally entered.

I.

The trial court originally ordered a new trial in this case because, on the day that the defendants were to be sentenced pursuant to their conviction on drug offenses, defense counsel produced an affidavit of the jury foreman, William Snyder, stating that Mr. Snyder had "heard the Judge's comments concerning whether there would be evidence of chop shop, prostitution and murder admitted at the trial," and that these comments "were heard by other members of the jury and were discussed by the jury panel during recesses."  On appeal from that order, see United States v. Hall, 85 F.3d 367, 369 (8th Cir. 1996), we found that "one affidavit does not provide sufficient evidence on which to reach a fully informed decision," and remanded so that the district court could "explore the nature of the jury's exposure to extraneous, prejudicial information beyond what the single affidavit recount[ed]."

On remand, the trial court reinstated its order immediately after holding an evidentiary hearing.  At that hearing, defense counsel called only one juror, Mr. Snyder, and he affirmed what he had said in his affidavit.  He estimated that the subject of what was overheard from side-bar conferences was broached three or four times in the presence of a majority of the jurors.  He said that it "wasn't any kind of serious deliberation of, you know, worldly matters or anything, [but] break room type discussion in the manner of, did you hear what he said or that kind of discussion."  The government, on its part, called eleven jurors, none of whom testified to being able to understand anything that was ever said at a side-bar conference.  One juror, Tammy Smith, testified that "a couple" of jurors approached her and indicated a desire to talk about matters overheard from bench conferences, but that she stopped the conversation before it began.  None of the other jurors whom the government called had any recollection of any discussions among the jurors on these matters.  Only two of the jurors did not testify:  The government called a government agent to testify about a telephone interview of one of those, and the other one was not located.

The trial court found that Mr. Snyder's credibility had not "been disproven," and credited his testimony. In granting the motion for a new trial, the trial court commented that "certainly the case was not so strong or overwhelming on the part of the government that the jury would have returned a verdict such as it did, absent a hearing of the statements concerning chop shop, prostitution and murder."

## II.

As we noted in the first appeal, we believe that prejudice might properly be presumed in this case because the comments alleged to have been overheard from side-bar conferences involved " 'factual evidence not developed at trial.' " Hall, 85 F.3d at 371, quoting United States v. Cheyenne, 855 F.2d 566, 568 (8th Cir. 1988). Once such a presumption arises, it becomes the government's burden to show that "the contact was harmless beyond a reasonable doubt." United States v. Blumeyer, 62 F.3d 1013, 1017 (8th Cir. 1995), cert. denied, 116 S. Ct. 1263 (1996). We must ask, in other words, if a presumption of prejudice arises, whether the extrinsic evidence was "reasonably likely to affect the verdict, considering the strength of the government's case and whether [the strength of the government's case] outweighed any possible prejudice caused by the extrinsic evidence." Id. In light of our holding in United States v. Delaney, 732 F.2d 639, 643 (8th Cir. 1984), quoting Stone v. United States, 113 F.2d 70, 77 (6th Cir. 1940), that " '[i]f a single juror is improperly influenced, the verdict is as unfair as if all were,' " we believe that the appropriate inquiry is whether there is any reasonable chance that the jury would have been deadlocked or would have reached a different verdict but for the fact that even one reasonable juror was exposed to prejudicial extraneous matter.

Even if we credit Mr. Snyder's testimony entirely, and discredit all of the other testimony, as the trial court did, thus giving rise to a presumption of prejudice, we believe that there was no reasonable chance that the jury would have been deadlocked or would have reached a different verdict in the absence of the extraneous information. First of all, we think that the government's case, which was based on strong physical

evidence, and was supported extensively by the corroborating testimony of Kellie Wright and four others, was compelling. Second, we find for reasons that follow that the extrinsic information to which the jury was exposed was received in a context that made any association between it and the defendants speculative; in fact, we are unpersuaded that a reasonable inference could even have been drawn that the conversations at the bench had to do with the conduct of the defendants rather than the conduct of a prosecution witness.

Key to the understanding of the matter of context is the fact that it was the defense, not the prosecution, that wanted to introduce evidence relating to murder, prostitution, and the operation of a chop shop. Defense counsel hoped to undermine the credibility of Ms. Wright, the prosecution's primary witness, by showing that on previous occasions she had falsely accused the defendants of these crimes. The first time that these words arose in the courtroom was in a side-bar conference that followed immediately after the trial court interrupted a defense counsel's question to Ms. Wright which began "Did you tell Mark Deeds that you worked as a prostitute for Roy...." In that conference, the trial court told the defense that "you're not to go into the prostitution ... [t]he murder or the chop shop." The defense counsel argued at some length that these matters were important to its plans to impeach the witness. The trial court eventually cut off the discussion with a ruling that the matters were out of bounds. It is important to note that the prosecutor did not speak at all during this conference.

While Ms. Wright was still on the stand, the defense renewed its attempt to go into these matters a short while later in a second bench conference. The trial court said to the defense counsel, "if you are wanting to offer evidence relative to a murder, relative to the chop shop, relative to the prostitution, relative [to] the motorcycle club, it's not to be gone into." The prosecutor spoke only briefly at the beginning of this conference, and did not speak at all after the trial court's comment.

-4-

There are, therefore, by our reading, only two times when a juror conceivably could have heard the trial court mention the offending words, and it is important to bear in mind that it was the trial court's words that Mr. Snyder testified to overhearing. These two episodes both occurred in the course of the defense cross-examination of the key prosecution witness. During the bench conferences the defense counsel was the party arguing at length, and with some vehemence, with the trial court. The first conference, moreover, came on the heels of the trial court abruptly curtailing a defense counsel's questioning of the prosecution witness. The only reasonable inference, we believe, that a reasonable person overhearing these utterances could draw in these circumstances is that the offending words had to do with matters that the defense itself wanted to bring into trial, as was indeed the case.

We find, therefore, that in the circumstances of this case the possibility of measurable prejudice to the defendants was highly unlikely, and, when we consider the strength of the government's case, we find that the effect of the extrinsic matter was harmless beyond a reasonable doubt.

## III.

For the reasons indicated, we remand the case to the district court for sentencing.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-