———————

No. 95-2009

———————

United States of America,           *
                                    *
         Appellee,                  *
                                    *   Appeal from the United States
v.                                  *   District Court for the Eastern
                                    *   District of Arkansas.
Bruce Raymond Swinton,              *
                                    *
         Appellant.                 *


———————

Submitted:  November 14, 1995

Filed:  January 31, 1996

———————


Before FAGG, BRIGHT, and DUPLANTIER,[*] Circuit Judges.

———————


BRIGHT, Circuit Judge.

     A jury convicted Swinton of seven counts of bank fraud in violation of 18 U.S.C. § 1344, and he was sentenced to thirty-seven months imprisonment.  Swinton raises three issues on appeal: (1) the court violated Fed. R. Evid. 404(b) by allowing the government to introduce evidence of other, uncharged transactions in which he was involved; (2) the evidence was insufficient to support the conviction; and (3) the jury considered extraneous evidence in reaching the verdict.  We reject Swinton's first two claims and remand to the district court for an evidentiary hearing on his third.

———————

[*]The Honorable Adrian G. Duplantier, United States District Judge for the Eastern District of Louisiana, sitting by designation.

## I. BACKGROUND

Swinton, a real estate entrepreneur and building contractor, was charged with seven counts of causing misrepresentations to be made to financial institutions in violation of 18 U.S.C. § 1334. The indictment alleged that Swinton was engaged in a sham sale scheme in which he persuaded friends and acquaintances to take out loans in their own names to buy residential properties for him. Swinton promised the buyers that he would make all payments on the loans. The purported buyers typically would falsely represent their qualifications for the loan and their intention to reside on the property. The purported buyers would also state that they had made a downpayment on the property which they, in fact, had not made. Immediately after the sale of the property, the purported buyer would "transfer" the property to Swinton via a quitclaim deed. Swinton eventually defaulted on the loans. Since the loans were all insured, the losses ultimately fell on the Department of Housing and Urban Development.

Prior to trial, defense counsel filed a motion requesting disclosure of any "prior bad acts" evidence that the Government intended to introduce pursuant to Fed. R. Evid. 404(b).[1] The Government responded by stating that they had opened their files and that any 404(b) material sought by Swinton would be in those files. The files contained information on the seven charged

---

[1]Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

properties and approximately twelve additional uncharged transactions.

At trial, the Government produced three witness who testified that they participated as the purported buyer in transactions for which Swinton was charged. The Government also introduced evidence concerning several other uncharged property transactions occurring within the same approximate time period. The district court admitted these uncharged transactions into evidence over defense counsel's objection that the pretrial notice was insufficient to satisfy the requirements of Rule 404(b). The court determined that the Government need not satisfy the Rule 404(b) requirements because the evidence tended to prove the existence of the plan, scheme, or artifice for which Swinton was charged, and was thus not "other acts" evidence governed by that rule.

The jury convicted Swinton on all seven counts. The court sentenced Swinton to thirty-seven months imprisonment followed by three years of supervised release. Swinton moved for a new trial claiming that the evidence of the other property transactions should not have been admitted.

After the trial, a member of the jury contacted Swinton and indicated that, during jury deliberations, another juror had mentioned that Swinton had a prior record. No evidence had been introduced at the trial concerning any prior conviction. Swinton's counsel filed a motion requesting that he be allowed to discuss the matter with the jurors and renewed a motion for a new trial based upon the jury considering extrinsic evidence. The district court denied both motions, determining that the information was not "extraneous", as required by Rule 606(b), because any discussion or speculation about the prior conviction would have originated within the jury room and not from an extraneous source.

## II. DISCUSSION

### A. EVIDENCE OF "PRIOR BAD ACTS"

During trial, the Government introduced evidence concerning seven property transactions in which Swinton was involved but for which he had not been indicted. Defense counsel objected to the evidence asserting that the Government had failed to provide the notice required by Fed. R. Evid. 404(b). Citing United States v. Bass, 794 F.2d 1305, 1312 (8th Cir. 1986), cert. denied, 479 U.S. 869 (1986), the district court stated that the evidence was not Rule 404(b) evidence and admitted the evidence pursuant to Rule 402. We review a district court's decision to admit evidence for an abuse of discretion. United States v. Severe, 29 F.3d 444, 447 (8th Cir. 1994), cert. denied, 115 S.Ct. 763 (1995).

Rule 404(b) governs the admission into evidence of "other crimes, wrongs, or acts." The rule applies only to "extrinsic" and not to "intrinsic" evidence. See, United States v. Oakie, 12 F.3d 1436, 1441-42 (8th Cir. 1993); Bass, 794 F.2d at 1312; United States v. Deluna, 763 F.2d 897, 913 (8th Cir.), cert. denied, 474 U.S. 980 (1985); see also, Rule 404(b) Senate committee notes, 1991 amendment. In Bass, we explained this distinction stating,

> We have held that where evidence of other crimes is "so blended or connected, with the one[s] on trial as that proof of one incidentally involves the other[s]; or explains the circumstances; or tends logically to prove any element of the crime charged," it is admissible as an integral part of the immediate context of the crime charged. When the other crimes evidence is so integrated, it is not extrinsic and therefore is not governed by Rule 404(b).

Bass, 794 F.2d at 1312 (quoting United States v. Derring, 592 F.2d 1003, 1007 (8th Cir. 1979) (citations omitted).

The Government further argues that the evidence concerning the other uncharged transactions went directly to an element of the crime -- the existence of a scheme or artifice -- and thus must be considered as "intrinsic" evidence. Section 1344, the violation of which Swinton was convicted, provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice --
>
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344 (1994). Thus, as one of the elements of bank fraud, the government must establish that the defendant knowingly executed (or attempted to execute) a "scheme or artifice". The indictment alleged that Swinton was involved in a single scheme to defraud financial institutions, and that in furtherance of this scheme, he "would cause misrepresentations and false information in the mortgage loan applications and closing documents." Superseding Indictment, p. 2. Although Swinton was charged with seven separate counts of bank fraud, this court has previously held that each execution of a single scheme to defraud constitutes a separate offense. See United States v. Barnhart, 979 F.2d 647, 651 (8th Cir. 1992).

In this case, Swinton was charged with conducting a continuing scheme to defraud. Where the charged offenses were not isolated acts, but rather, were part of the series of transactions involving the same principal actors, in the same roles, and employing the same general modus operandi, the various acts may be considered to constitute a single scheme. See United States v. Muscatell, 42 F.3d 627, 630-31 (11th Cir.), cert. denied, 115 S.Ct. 2617 (1995).

-5-

"An uncharged act may not be extrinsic if it was part of the scheme for which a defendant is being prosecuted." United States v. Oles, 994 F.2d 1519, 1522 (10th Cir. 1993) (quoting United States v. Record, 873 F.2d 1363, 1372 n.5 (10th Cir. 1989).

In sum, the uncharged transactions are "intrinsic" to the charged counts of bank fraud if (1) the collected transactions were all part of a single scheme, or (2) the uncharged transactions were "so blended or connected, with the one[s] on trial as that proof of one incidentally involves the other[s]." Bass, 794 F.2d at 1312. With these principles in mind, we examine the specific uncharged transactions introduced at trial.

Three of the seven uncharged transactions introduced at trial concerned loan transactions in which Courtney Washington was the purported buyer of the property. Washington was also the purported buyer in four of the charged transactions. At trial, Washington testified that in each of the charged transactions, he had no intention of acquiring an ownership interest in the properties but rather purchased the properties for Swinton because Swinton had "bad credit". He also stated that although the loans indicated that he made a downpayment, no such payment was actually made. After the sale transpired, Washington quitclaimed the properties back to Swinton. Union Modern Mortgage made each of the loans in the charged transactions, and the same closing agent ran all the closings.

The three uncharged transactions involving both Swinton and Washington which were introduced at trial were clearly part of the same scheme as the four charged counts. Union Modern Mortgage made each loan, and the closing agent that closed the charged transactions closed these uncharged counts as well. Washington also quitclaimed these properties to Swinton following the sale. Finally, Washington testified that he had no intention to assume an ownership interest in any of these properties. Such evidence did

-6-

not concern "other acts" but rather acts belonging to the charged scheme.  See Severe, 29 F.3d at 447.  The evidence of the other, uncharged transactions did not necessarily implicate Rule 404(b) because this evidence related to the existence of a scheme, an element of the charged crime.

Swinton was convicted on one count relating to the purchase and sale of a property at 2601 Rock Street in which Herbert Brooks was the purported buyer.  At trial, the Government introduced evidence about a prior uncharged transaction regarding a property at 1817 Shiller in which both Swinton and Brooks participated.  The Shiller property was a part of the overall scheme and employed the same modus operandi in which Brooks misrepresented the existence of a downpayment, purchased the property for Swinton, and then quitclaimed the property to Swinton after the closing. Furthermore, the Shiller property was closely integrated into the Rock Street transaction.  First, the earlier transaction explained how Brooks came to be involved with the Rock Street transaction. Secondly, the real estate contract for the Rock Street property indicated that Brooks would be trading his equity in the Shiller property as a source of downpayment.  The Government introduced evidence surrounding the Shiller property to show that Brooks believed he had no equity in that property, and thus was not contributing any value to the subsequent purchase.[2]

Finally, the Government introduced uncharged transactions concerning 2505 Marshall, 1322 Jones, and 1824-26 Pulaski.  In all these instances, the purported buyer was Janette Jackson.  Jackson was the purported buyer in one of the indicted transactions, 917 College.  In obtaining the loan for the College property, Jackson indicated that she would occupy that property for her home and that

---

[2]An uncharged transaction involving Swinton, Brooks and a property located at 5418 W. 33rd was also discussed at trial.  That property, however, was first introduced by defense counsel.

funds for the purchase came from her sale of the Marshall property. The Government introduced evidence concerning the 1322 Jones property because the loan file for that transaction, which followed the College transaction, indicated that Jackson's home was 2201 Center and not 917 College. The uncharged transaction thus presented evidence tending to show that Jackson had not intended to occupy the College property. The Government introduced evidence surrounding the Marshall property which indicated that the property had been quitclaimed from Jackson to Swinton. This evidence thus called into question the existence of any proceeds from the Marshall property. Thus the Marshall and Jones transactions were "so blended or connected" with the charged count "so that proof of one incidentally involves the other[s]." Bass, 794 F.2d at 1312.

The evidence submitted surrounding the 1824-26 Pulaski transaction, however, is more problematic. Although the district court conditionally admitted evidence regarding that transaction,[3] the Government never established that a quitclaim deed had been used in that instance, nor that any of the representations in the file were false. Accordingly the Government did not show that this property was a part of the same overall scheme or that it was blended with one of the charged counts in any way other than the fact that Jackson and Swinton were both participants.

Although evidence surrounding this transaction should not have been admitted into evidence, in light of the entire record, we determine that its admission constituted harmless error. Discussion of the Pulaski transaction consisted of a series of hypothetical questions to a bank officer concerning the loan. Little, if any, prejudice flowed from the admission of the evidence, given that the Government never developed any evidence of

_____

[3]Apparently the evidence was not withdrawn and no limiting instruction was subsequently given so the materials remained in evidence.

wrongdoing.  The introduction of the Pulaski transaction into evidence cannot be said to have prejudiced Swinton.

We add a comment.  The issue here is a close one, and the Government ought not to have risked prejudicial error in the trial. The prosecutor should have disclosed the evidence in question to the defendant as likely Rule 404(b) evidence.  Simply making available mountains of documents without specifying which will likely be submitted has elements of unfairness causing needless expense to the defendant.  There is no reason for the prosecution not to provide reasonable notice of such evidence prior to the trial

## B. SUFFICIENCY OF THE EVIDENCE

Swinton argues that the evidence was insufficient as a matter of law to support the jury's verdict.  He argues that the Government presented no evidence that directly established that he intended to defraud the financial institutions or that he enlisted others to further this scheme.

In reviewing the sufficiency of the evidence, this court must view the evidence in the light most favorable to the government, resolving all conflicts in the government's favor.  United States v. Wonderly, 70 F.3d 1020, 1023 (8th Cir. 1995).  Intent to defraud need not be shown by direct evidence; rather, it may be inferred from all the facts and circumstances surrounding the defendant's actions.  Id. (quoting United States v. Clausen, 792 F.2d 102, 105 (8th Cir.), cert. denied, 479 U.S. 856 (1986)).  Upon reviewing the evidence, we determine that the jury could reasonably have concluded that Swinton knowingly executed a scheme to obtain funds under false pretenses.  Accordingly, we hold that the evidence was sufficient to support the jury's verdict.

## C.  JURY MISCONDUCT

Swinton states that, after the trial, one of the jurors contacted him and informed him that during jury deliberations, someone stated that Swinton had a criminal record.  The juror did not indicate the source of this information.  Although Swinton did have a prior conviction, no evidence introduced at the trial contained any mention of this prior conviction.[4]

Swinton's counsel filed renewed motions requesting that he be allowed to discuss the matter with the jurors and for a new trial based upon the jury considering extrinsic evidence.  The district court denied both motions, determining that the information was not "extraneous" because any discussion or speculation about the prior conviction would have originated within the jury room and not from an extraneous source.

Fed. R. Evid. 606(b) generally prohibits a juror from impeaching his or her verdict.[5]  See United States v. Krall, 835

---

[4]In fact, the trial judge prohibited any mention of Swinton's prior felony conviction in the testimony of witness Washington. Tr. at 467-82.

[5]Fed. R. Evid. 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.  Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

F.2d 711, 715-16 (8th Cir. 1987).  The only exception to this rule is that "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror."  Fed. R. Evid. 606(b).

Although Swinton does not contend that "any outside influence was improperly brought to bear upon any juror", he argues that the discussion of the prior conviction constitutes "extraneous prejudicial information."  In United States v. Bassler, 651 F.2d 600, 602 (8th Cir. 1981), cert. denied, 454 U.S. 1151 (1982), this court stated,

> Extrinsic or extraneous influences include publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons.  Extrinsic or extraneous influences may be grounds for impeaching a verdict.

Discussion of a prior conviction which was not introduced at trial fits the category of "matters considered by the jury but not admitted into evidence."

The Government argues that if the jury improperly discussed defendant's prior conviction, such a discussion is not a matter of extrinsic evidence at all because it would have originated from within the jury room.  The Government's position, basically, is that evidence coming from the jurors themselves is not "extrinsic."
The question of when a juror is resorting to knowledge obtained outside the record presents some difficulties.  Although jurors are expected to bring commonly known facts to bear in assessing the facts presented for their consideration, resort by a juror to anything other than common knowledge or record facts might be held to violate the right to confrontation.  3 Weinstein's Evidence, ¶ 606[04], at 606-44, 46 (1995); see also United States

ex rel. Owen v. McMann, 435 F.2d 813 (2d Cir. 1970), cert. denied, 402 U.S. 906 (1971).

In McMann, Judge Friendly provides a thorough discussion of when statements by jurors regarding their personal knowledge of a defendant may invalidate a verdict. First, Judge Friendly rejects the juror/non-juror distinction that the Government suggests here, stating, "There is no rational distinction between the potentially prejudicial effect of extra-record information which a juror enunciates on the basis of the printed word and that which comes from his brain." 435 F.2d at 820. Judge Friendly instead adopts a distinction between allegations of specific facts as opposed to general knowledge or beliefs:

> In short, the inquiry is not whether the jurors "became witnesses" in the sense that they discussed *any* matters not of record but whether they discussed specific extra-record *facts* relating to the defendant, and if they did, whether there was a significant possibility that the defendant was prejudiced thereby.

McMann, 435 F.2d at 818 n.5.

This court's opinion in United States v. Eagle, 539 F.2d 1166, 1170 (8th Cir.), cert. denied, 429 U.S. 1110 (1976), further suggests that the jury's discussion of specific extra-record facts can constitute grounds for challenging the verdict. In Eagle, a juror speculated during the trial that the defendant might be one of the men charged in an unrelated incident in which two FBI agents had been killed. This court found that this "realization" did not constitute an "extraneous influence" because the juror never voiced his suspicions in the jury room. Because the allegations didn't go beyond the mental processes of the juror they did not amount to "extraneous influences." In this case however, the allegation concerning Swinton's prior conviction was voiced. In this instance, we have an allegation that the jury considered a specific statement of fact that had not been admitted into evidence. We

-13-

therefore conclude that the statement was "extraneous prejudicial information" within the meaning of Rule 606(b).  <u>See also</u>, <u>United States v. Perkins</u>, 748 F.2d 1519, 1533-34 (11th Cir. 1984).

The district court declined to investigate the purported statement any further because it incorrectly determined that any such testimony would be barred under Rule 606(b).  Given the risk that the jury's discussion of a prior conviction may prejudice the defendant in a case where fraudulent intent is a key ingredient, we believe it is appropriate to remand to the district court to hold an evidentiary hearing.  <u>See</u> <u>United States v. Bagnariol</u>, 665 F.2d 877, 885 (9th Cir. 1981), <u>cert. denied</u>, 456 U.S. 962 (1982) (noting that where trial court learns of possible juror misconduct, it must hold evidentiary hearing to determine precise nature of extraneous information); <u>United States v. Rhodes</u>, 556 F.2d 599, 602 (1st Cir. 1977) (stating that denial of motion for new trial without any investigation of exposure to extraneous materials was insufficient response to serious matters raised in affidavit); <u>cf</u>. <u>United States v. Cheyenne</u>, 855 F.2d 566, 568 (8th Cir. 1988) (stating district court properly conducted extensive hearing to determine effect of extraneous material on jury deliberations); <u>see also</u>, 3 Weinstein's Evidence, ¶ 606[05], at 606-52 (when sufficient showing is made of type of misconduct which is not on its face barred by Rule 606(b), further inquiry is warranted).

This circuit has established standards governing inquiries into juror misconduct.  First, where juror misconduct exposes the jury to factual matters not in evidence, we presume prejudice and require the government to prove beyond a reasonable doubt that the inappropriate activity did not harm the defendant.  <u>Wyldes v. Hundley</u>, 69 F.3d 247, 252 (8th Cir. 1995); <u>see also</u> <u>United States</u>

v. Rowley, 975 F.2d 1357, 1363 (8th Cir. 1992); Cheyenne, 855 F.2d at 568.[6]

Second, this circuit applies an objective test to assess whether the extraneous information would likely affect a typical juror when the government must overcome a presumption of prejudice. United States v. Blumeyer, 62 F.3d 1013, 1017 (8th Cir. 1995). The relevant considerations include (1) whether the extrinsic evidence was received by the jury and the manner in which it was received; (2) whether it was available to the jury for a lengthy period of time; (3) whether it was discussed and considered extensively by the jury; (4) whether it was introduced before a verdict was reached and, if so, at what point during the deliberations was it introduced; and (5) whether it was reasonably likely to affect the verdict, considering the strength of the government's case and whether it outweighed any possible prejudice caused by the extrinsic evidence. Id.

## III. CONCLUSION

We affirm the rulings of the district court that the uncharged transactions were properly admissible and that the verdict was supported by sufficient evidence. We remand to the district court to hold an evidentiary hearing as to potential juror misconduct, to make appropriate findings, and upon those findings to either grant or deny the defendant's motion for a new trial.

---

[6]In Taylor v. Mabry, 593 F.2d 318, 320 (8th Cir. 1979)(per curiam), this court stated that proof that one juror had informed other jurors of defendant's prior convictions would constitute a primae facie showing of prejudice.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.