**Oscar A. ARROYO, Petitioner,**

v.

**Hans WALKER, Superintendent, Auburn Correctional Facility, Respondent.**

**No. CV 95–4087.**

United States District Court,
E.D. New York.

May 13, 1997.

Oscar Arroyo, Auburn, NY, pro se.

Dennis Dillon, Nassau County District Attorney by Bruce E. Whitney, Assistant District Attorney, Mineola, NY, for Respondent.

WEXLER, District Judge.

*Pro se* petitioner Oscar A. Arroyo ("Arroyo") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent opposes the petition.

## I. *BACKGROUND*

Arroyo was indicted for criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the first and third degrees, arising from the sale of over two ounces of cocaine to an undercover police office, Knorland Carroll ("Carroll"), on April 28, 1976. By judgment rendered May 20, 1977, after a jury trial, Arroyo was convicted of criminal sale of a controlled substance in the first degree and sentenced to an indeterminate term of imprisonment of twenty years to life.

On May 14, 1979, the Appellate Division, Second Division, affirmed Arroyo's conviction. *People v. Arroyo*, 70 A.D.2d 787, 416 N.Y.S.2d 158 (2d Dep't 1979). The New York Court of Appeals denied leave to appeal on June 22, 1979. *People v. Arroyo*, 47 N.Y.2d 1013, 420 N.Y.S.2d 1027, 394 N.E.2d 295 (1979).

Arroyo filed a federal habeas corpus petition in the Eastern District of New York in 1979, asserting five claims (the "first petition"). By Memorandum and Order dated April 17, 1980, familiarity with which is assumed, then-District Judge George Pratt determined that Arroyo failed to exhaust state remedies as to two of his claims and that the remaining three claims were without merit. The two unexhausted claims were (1) that the prosecution's failure to disclose exculpatory evidence violated his right to due process, and (2) that the prosecution failed to prove all elements of the crime beyond a reasonable doubt as required by the constitution. Accordingly, Judge Pratt dismissed the first petition without prejudice as to the unexhausted claims and dismissed the remaining three claims with prejudice. Judge Pratt later denied Arroyo's motion to reargue and his request for a certificate of probable cause to appeal. The Second Circuit also denied a certificate of probable cause to appeal.

Beginning in July 1977, Arroyo filed the first of nine motions to vacate his judgment of conviction in the state court pursuant to § 440.10 of the New York Criminal Procedure Law. All of these motions were denied, the last one on September 20, 1994.

In the meantime, in March 1984, Arroyo moved, *pro se*, in the Appellate Division to reargue his appeal on the ground that his appellate counsel was ineffective for failing to raise, *inter alia*, the following claims: (1) prejudicial matter discussed at a bench conference was overheard by the jury; (2) the prosecutor improperly elicited testimony concerning Arroyo's commission of uncharged crimes; and (3) ineffective assistance of trial counsel. On September 9, 1985, the Appellate Division denied the motion. Arroyo subsequently moved for a writ of coram nobis in the Appellate Division in May 1988 based on alleged ineffective assistance of appellate counsel. On June 16, 1989, the Appellate Division denied the motion.

Arroyo then filed the present petition (the "second petition"), which was randomly as-

signed to the undersigned.[1] In the second petition, Arroyo claims denial of his constitutional rights based on: (1) the trial court's failure to prevent the jury from overhearing prejudicial matter emanating from a bench conference; (2) prosecutorial misconduct by the prosecutor's introduction of inadmissible evidence, namely, evidence of uncharged crimes that resulted in an earlier mistrial; and (3) ineffective assistance of trial counsel. None of these claims were raised in Arroyo's first petition. However, Arroyo raised each of these claims in his § 440.10 motions, although each was held procedurally barred and, alternatively, found to be without merit. He also raised each of these claims in his motion for a writ of coram nobis as claims his appellate counsel failed to raise on direct appeal, allegedly demonstrating ineffective assistance of appellate counsel.

Respondent argues that this Court should dismiss the petition for abuse of the writ. Alternatively, respondent argues that Arroyo's claims are procedurally barred and, in any event, without merit.

## II. *DISCUSSION*

A federal court may dismiss a writ of habeas corpus if it is a "second or successive petition ... that ... fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." Rule 9(b) of the Rules Governing § 2254 Cases; *see also* 28 U.S.C. § 2244(b); *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). The Supreme Court clarified the standard for determining what constitutes abuse of the writ in *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In *McCleskey,* the Supreme Court adopted the *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), "cause" and "prejudice" standard as the standard for determining whether there has been an abuse of the writ through inexcusable

neglect. *See McCleskey,* 499 U.S. at 490–96, 111 S.Ct. at 1468–71; *see also Russo v. Mann,* 785 F.Supp. 34, 37 (E.D.N.Y.1992). In opposing a second or subsequent petition, the respondent "bears the burden of pleading abuse of the writ." *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470. The respondent meets this burden "if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ." *Id.* If respondent meets its burden, the burden shifts to the petitioner to disprove abuse. *Id.* Petitioner can disprove abuse by showing "cause for failing to raise [the new or different claim] and prejudice therefrom." *Id.* " '[C]ause ... requires a showing of some external impediment preventing counsel from constructing or raising the claim." ' *Id.* at 497, 111 S.Ct. at 1472 (quoting *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986)). The abuse-of-writ doctrine "examines petitioner's conduct": the question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process." *Id.* at 498, 111 S.Ct. at 1472. "The requirement of cause in the abuse-of-writ context is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *Id.* If the petitioner cannot show cause, petitioner's failure to raise the claim earlier might still be excused if the petitioner can show that a "fundamental miscarriage of justice" would result from the failure to entertain the claim. *Id.* at 494–95, 111 S.Ct. at 1470–71; *see also Kuhlmann v. Wilson,* 477 U.S. 436, 451–54, 106 S.Ct. 2616, 2625–27, 91 L.Ed.2d 364 (1986) (concluding that " 'ends of justice' require federal courts to entertain [successive] petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence").

---

1. Since the first petition, Judge Pratt was appointed to the Court of Appeals for the Second Circuit and is now retired from the bench.

■ Respondent has met its burden of pleading abuse of the writ as to all three claims raised in the second petition. Arroyo does not attempt to show cause in his supporting papers and does not submit any reply papers in response to respondent's opposition. Despite Arroyo's failure to attempt to show cause, it appears clear from the record that he possessed, or by reasonable means could have obtained, a sufficient basis to allege in the first petition, filed over 15 years ago, his present claims. Moreover, even if Arroyo could show cause for failing to raise these claims in the first petition, he cannot show actual prejudice. *See McCleskey,* 499 U.S. at 502, 111 S.Ct. at 1474–75; *Russo,* 785 F.Supp. at 37–38.

■ As for the first claim, Arroyo contends that the jury overheard a bench conference concerning the prosecutor's request that the witness on the stand, Phefilia Harkless ("Harkless"), be allowed to testify to certain statements that she overheard Arroyo make implicating him in prior drug dealing with an accomplice, Alberto Morales ("Morales"). Minutes of Trial ("Tr.") 155–58. The record does not support Arroyo's claim. The record demonstrates that before the bench conference began, defense counsel asked the trial court to excuse the jury because defense counsel's investigator told defense counsel that the bench conferences of the previous day were audible from the back of the courtroom. The trial court refused defense counsel's request, and the bench conference was held. The trial court ruled that the proffered testimony was inadmissible. Neither during nor after the bench conference did defense counsel complain or object that the jury overheard the prosecutor's remarks at the bench conference. Any claim that the jury heard or was prejudiced by statements made during the bench conference is entirely speculative. As there was no basis for the trial court to believe that the jury overheard the bench conference at issue, there was no obligation on the trial court to probe the jurors. Because this claim is without merit, Arroyo cannot show actual prejudice from the failure to entertain this claim.

As for the second claim, as the record shows, a first trial ended in a mistrial after Morales testified to Arroyo's commission of uncharged crimes, specifically, other drug transactions involving Arroyo. Tr. 45. Arroyo claims that the prosecution introduced that same evidence in the retrial. Arroyo primarily complains about Morales' testimony of a conversation between himself and Arroyo on April 25, 1976, three days before the transaction charged in the indictment, concerning a drug transaction on April 25, 1976. Morales' testimony included the following exchange:

[Prosecutor]: Mr. Morales, on or about April 25, 1976, did you have occasion to see the defendant?

[Morales]: April 25? Yes, I saw him.

[Prosecutor]: Did you have a conversation with him?

[Morales]: With him? Yes.

[Prosecutor]: Would you relate to the Court and jury what that conversation was.

[Morales]: The conversation that I had with him was that he told me—he said if the client [*i.e.,* Carroll, the undercover police officer] needed drugs, and I said he should ask Fefe [Harkless], that Fefe had the client's telephone number that the client had given to her.

. . .

. . . I told him that the client was paying the $800 for the ounces. So he told me that it was a lie because the client had given him the first sale to Fefe $600 for half an ounce.

[Prosecutor]: Okay, now did you speak to the defendant about a future sale to this client?

[Morales]: Yes.

Tr. 46. Other evidence which Arroyo contends was improperly admitted includes Morales' testimony that on the evening of April 28, 1976, Arroyo possessed a dollar bill that had cocaine on it and gave Morales another dollar bill that had cocaine on it. *See* Tr. 57. In addition, Arroyo contends that evidence was improperly admitted to show that Arroyo was conspiring to import drugs from San Francisco, *see* Tr. 133, and that Arroyo had sold drugs on April 20, 1976, *see* Tr. 200. As for the latter evidence, Carroll testified

that he seized drugs from Morales "on the 20th of April, 1976." Tr. 200. Respondent argues that the challenged evidence, including Morales' testimony about the conversation between himself and Arroyo on April 25, 1976, was properly admitted as proof of Arroyo's participation in the charged drug transaction of April 28, 1976, and that the April 25, 1976 conversation above did not implicate Arroyo in the client's" purchase of drugs from Harkless.

Despite Arroyo's contentions, the challenged evidence, for the most part, was properly admitted as proof of Arroyo's participation in the charged drug transaction of April 28, 1976. For instance, Morales' testimony about the cocaine on the dollar bills concerned the details of Arroyo's and Morales' acts leading up to and surrounding the charged drug deal on April 28, 1976. Similarly, the drugs that were offered into evidence as People's Exhibit 3 clearly were the drugs that Carroll testified Morales sold him on April 28, 1976 and that Carroll seized from Morales when he arrested Morales that day. Whether Carroll misstated the date he seized the drugs or the court reporter incorrectly transcribed Carroll's testimony, no reasonable juror could have mistaken that Carroll's testimony concerned the drugs he seized from Morales on April 28, 1976 after he arrested Morales during the charged drug transaction. *See* Tr. 196–211.

■ Contrary to respondent's argument, Morales' reference to the transaction involving Harkless and the "client" did implicate Arroyo in that transaction, although the reference is not completely clear. However, given the substantial evidence of Morales' participation in the April 28, 1976 drug transaction, to the extent Morales' reference to the transaction between Harkless and the "client" implicated Arroyo in that transaction, the record demonstrates that any error was harmless, particularly since the prosecutor did nothing to emphasize or develop the statement either at the time it was made or thereafter. *See United States v. Castano,* 999 F.2d 615, 617 (2d Cir.1993); *United States v. Anzalone,* 626 F.2d 239, 245–46 (2d Cir.1980); *see also United States v. Swinton,* 75 F.3d 374, 379–80 (8th Cir.1996); *United*

*States v. Sanders,* 928 F.2d 940, 942–43 (10th Cir.), *cert. denied,* 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991).

■ As for the reference to Arroyo conspiring to import drugs from San Francisco, during Morales' cross-examination, defense counsel had admitted into evidence a statement, dated April 29, 1976, written and signed by Morales while he was in jail, which statement exculpated Arroyo. Tr. 88–92. On redirect examination, Morales testified that the statement was coerced by Arroyo and others and that Arroyo promised to get Morales out on bail with money Arroyo apparently would make selling drugs in or obtained from San Francisco. Tr. 133 ("[Morales]: He [Arroyo] also said that if he would get out to the street, he was going to San Francisco, he was going to get a drug, he was going to get a drug to get me out on bail."). Even if this comment was understood to refer to Arroyo "consipring [sic] to import drugs from San Francisco," Petition for a Writ of Habeas Corpus, at 12, admission of this testimony, to the extent it was error, was harmless in light of the substantial evidence of Arroyo's guilt and given the inadvertent and vague nature of the reference and the fact the prosecutor did nothing to emphasize or develop the statement either at the time it was made or thereafter. *See Castano,* 999 F.2d at 617; *Anzalone,* 626 F.2d at 245–46; *see also Swinton,* 75 F.3d at 379–80; *Sanders,* 928 F.2d at 942–43. Accordingly, Arroyo cannot show actual prejudice from failure to entertain his second claim.

■ As for the third claim, to establish a claim of ineffective assistance of counsel, Arroyo must demonstrate: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's error, the result in the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984). Arroyo's claim for ineffective assistance of trial counsel is without merit. A review of the record indicates that defense counsel's overall performance did not fall below an objective standard of reasonableness. Accordingly, Arroyo

cannot show actual prejudice from the failure to entertain this claim.

 Moreover, each of the three claims raised by Arroyo in the second petition was held procedurally barred by the state court. Federal review of a procedurally defaulted claim "is barred unless the petitioner can demonstrate cause for the procedural default and prejudice flowing therefrom, or that 'failure to consider the claim[ ] will result in a fundamental miscarriage of justice.'" *Vargas v. Keane,* 86 F.3d 1273, 1280 (2d Cir.) (citing *Wainwright v. Sykes,* 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–09, 53 L.Ed.2d 594 (1977), and quoting *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991)), *cert. denied,* —— U.S. ——, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996); *see also Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Meachem v. Keane,* 899 F.Supp. 1130, 1138–39 (S.D.N.Y.1995). "In procedural default cases, the cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *McCleskey,* 499 U.S. at 493, 111 S.Ct. at 1470 (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). "[C]onstitutionally 'ineffective assistance of counsel ... is cause.'" *Id.* at 494, 111 S.Ct. at 1470 (quoting *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645). "Once the petitioner has established cause, he must show '"actual prejudice" resulting from the errors of which he complains.'" *Id.* at 494, 111 S.Ct. at 1470 (quoting *United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982)). Even if Arroyo could show "cause" for having failed to raise these claims on direct appeal, based on ineffective assistance of appellate counsel, he cannot show "prejudice," as discussed above.

Lastly, Arroyo fails to show that dismissal of the petition for abuse of the writ or that failure to entertain his procedurally defaulted claims would result in a "fundamental miscarriage of justice." *See McCleskey,* 499 U.S. at 495, 111 S.Ct. at 1470–71; *Vargas,* 86 F.3d at 1280.

## III. CONCLUSION

For the reasons above, the petition is dismissed for abuse of the writ; alternatively, because the claims are procedurally barred and, in any event, without merit, the petition is denied. The Clerk of the Court is directed to close the file in this matter.

SO ORDERED.