# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3011

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Scott James Eizember, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 13, 2007
Filed: May 10, 2007 **(Corrected 5/21/07)**

_____

Before RILEY, BOWMAN, and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

A jury convicted Scott Eizember of two counts of kidnapping, *see* 18 U.S.C. § 1201, possession of a firearm in connection with a crime of violence, *see* 18 U.S.C. § 924(c), and armed carjacking, *see* 18 U.S.C. § 2119. On appeal, Mr. Eizember argues that the district court[1] should have twice declared a mistrial, first when a witness recounted Mr. Eizember's comment that he was on death row and later when the jury became privy to extraneous information about the defendant's criminal record. We affirm.

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

## I.

Dr. Samuel and Ms. Suzanne Peebles testified at trial that Mr. Eizember had carjacked their vehicle and forced them to drive him from Arkansas to Texas, repeatedly threatening to kill them if they resisted. Ms. Peebles testified that she felt threatened because Mr. Eizember said that "he was wanted in Oklahoma, he was on death row going into Oklahoma, [and] he had nothing to lose." Mr. Eizember then moved for a mistrial. The district court rejected that motion on the ground that the statement was admissible. We agree.

Ms. Peebles's statement was integral to the kidnapping charges against Mr. Eizember because it was relevant to the question of whether she and her husband drove Mr. Eizember to Texas against their will. *See* 18 U.S.C. § 1201; *United States v. McCabe*, 812 F.2d 1060, 1061 (8th Cir. 1987), *cert. denied*, 484 U.S. 832 (1987). Mr. Eizember maintains that Federal Rule of Evidence 404(b), which provides that evidence of a defendant's other crimes is generally not admissible, applies here. This argument is meritless. The challenged testimony was introduced not to prove that Mr. Eizember committed another crime, but to show that he said that he had done so (or said that he had been convicted of doing so). Of course, Federal Rule of Evidence 403 allows the district court to exclude evidence that is more unfairly prejudicial than probative, but we believe that the court did not abuse its discretion in determining that this rule did not justify exclusion here. *See United States v. Claxton*, 276 F.3d 420, 422-23 (8th Cir. 2002).

## II.

Mr. Eizember also maintains that the court should have declared a mistrial because jurors were tainted by information not in evidence regarding his criminal record, thus depriving him of his right to a fair trial.

The jurors began to deliberate in the afternoon of the second day of trial. Shortly after they resumed their deliberations the next morning, the foreperson

reported to the court that one juror, while all the other jurors were present, had begun to talk to everybody about his wife having seen information in the newspaper regarding Mr. Eizember's previous criminal activity. According to the foreperson, the offending juror said that his wife had read that Mr. Eizember "beat somebody before this crime happened." According to the foreperson, as the offending juror began speaking, other jurors made noises and said that they did not want to hear; the foreperson told the offending juror to stop and sent a note to the court.

The court then separately questioned the offending juror. The offending juror said that his wife had told him that Mr. Eizember had been prosecuted before and was "going to fry anyway," but that he had not told this to the other jurors; in response to another question, he said that he could not remember what he had told the other jurors. The district court excused the offending juror and replaced him with an alternate.

The district court then polled the other jurors in the presence of the full jury about what, if anything, they had heard. All of the other jurors stated that they had received no new information about Mr. Eizember, though some said that they had heard the offending juror saying that his wife had read about the defendant in the newspaper. Some of the jurors said that they had tried to drown out what the offending juror was saying and stop him from talking. One juror said that once the offending juror began talking "everybody was screaming, so there was a lot of confusion."

Mr. Eizember's counsel moved for a mistrial, which motion was denied. After the government requested "additional findings," the court stated that it believed that the jurors acted appropriately and "did get [the offending juror] stopped." It also noted to counsel that Mr. Eizember was on trial only for the charged offenses and that the jurors "are not to be influenced in any way by what [the offending juror] may have done." The judge then addressed all of the jurors, and they agreed that they would disregard whatever they may have heard and whatever the offending juror may have related to

them and would decide the case on the law and the evidence. The court also directed them to begin their deliberations anew with the alternate juror.

In determining whether the juror misconduct is fatal to a trial, the first question under the case law is whether it exposed the jury to "factual matters not in evidence." *See United States v. Swinton*, 75 F.3d 374, 382 (8th Cir. 1996). We think that the district court, by finding that the jurors acted appropriately and "did get [the offending juror] stopped" expressed its belief that the remaining jurors (other than the foreperson) had heard nothing new from the offending juror before he was prevented from continuing. On the basis of the record before us, this factual finding is not clearly erroneous.

The district court did not make a finding as to whether the foreperson heard any factual information not in evidence, but the foreperson's statements to the court certainly support a finding that he did, and it would probably have been clear error for the court to find that he did not. The information that the foreperson said that he had heard about Mr. Eizember was not admitted at trial: The prosecution did not introduce any evidence of Mr. Eizember's previous convictions or of his having beaten anyone. Although Ms. Peebles's testimony relayed Mr. Eizember's statement about being on death row, this statement was admissible only to show that Mr. Eizember threatened Ms. Peebles, not to show that Mr. Eizember had a criminal history or that he had received the death penalty.

Assuming that the foreperson was exposed to factual matters not in evidence, and even though he was the only juror who was, we feel obliged to presume prejudice and require the prosecution to prove beyond a reasonable doubt that the inappropriate activity did not harm Mr. Eizember. *Cf. United States v. Hall*, 116 F.3d 1253, 1255 (8th Cir. 1997), *cert. denied*, 522 U.S. 1140 (1998); *Swinton*, 75 F.3d 382. Under *Swinton*, we apply an objective test to assess whether the information "would likely affect a typical juror." *Id.*

-4-

We conclude that the prosecution has met its burden of showing that the juror's misconduct did not prejudice Mr. Eizember. Given the overwhelming strength of the government's case, the new information was not reasonably likely to have affected the verdict. The Peebleses both testified. They identified Mr. Eizember and described his crimes. This provided strong evidence from which the jury could conclude that Mr. Eizember was guilty. According to several jurors, the offending conduct of the juror lasted less than ten seconds, and the court instructed the jury to begin deliberations anew after the offending juror was replaced. Each juror, moreover, stated that he or she would be able to decide the case upon the law and evidence without bias. Considering all of these circumstances, we see no reason to think that but for the relevant misconduct, the jury's verdict would have been different. *See id.*

Mr. Eizember also contends that the district court did not adequately question the jurors. We disagree. We see no reason to believe that the court's process of questioning the jurors on the record about what they had heard and whether they were prejudiced was insufficient.

We now turn to a related challenge to a question that the court asked the foreperson. After the court denied a mistrial based on the offending juror's statements and found that the jurors had stopped the offending juror's misconduct, counsel continued to argue the issue. When the government and defense counsel disagreed as to what the foreperson had reportedly heard from the offending juror, defense counsel asked the court to question the foreperson again, and the court obliged. The foreperson stated that the offending juror "said out loud and I heard it, because I was looking directly at him, that his wife informed him that there was a previous crime where he beat two people. That's exactly what I heard." In response to the court's questions, the foreperson then stated that he had not heard the offending juror say anything else. Finally, the court said, "There was also made a comment something about 'he's going to fry anyway.' Did you hear that, too? Was that mentioned at all?" The foreperson

stated that he had not heard that and that what he had heard would not influence him in his deliberations. Defense counsel did not move again for a mistrial.

The court's suggestion that the offending juror had said something to the effect that Mr. Eizember "was going to fry anyway" might well itself have exposed the foreperson to information about Mr. Eizember that was not in evidence. Assuming, without deciding, that it did, we nevertheless think for the reasons already rehearsed above, that the court's suggestion did not work to Mr. Eizember's prejudice, especially considering the foreperson's assurances about his ability to decide the case based solely on the evidence. Mr. Eizember could be entitled only to plain error relief here in any case, because his counsel failed to move again for a mistrial after the judge's suggestion, and we discern nothing in this record that could qualify him for such exceptional relief. *See United States v. Villareal-Amarillas*, 454 F.3d 925, 930 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 989 (2007).

### III.

Mr. Eizember maintains finally that even if none of the alleged errors warrants reversal, their cumulative effect does. We disagree. "We may reverse where the case as a whole presents an image of unfairness that has resulted in the deprivation of a defendant's constitutional rights, even though none of the claimed errors is itself sufficient to require reversal." *United States v. Riddle*, 193 F.3d 995, 998 (8th Cir. 1999). This kind of argument would seem to work best in cases where individual errors were deemed harmless, but taken together might have resulted in an unfair trial. But, as we have already said, the district court did not err at all when it admitted Ms. Peebles's testimony regarding Mr. Eizember's statements that he was facing death row, nor did it err when it denied Mr. Eizember's motion for a mistrial. In any event, because we detect no unfairness in this record, we reject Mr. Eizember's final contention.

## IV.

For the reasons stated, we affirm the district court's judgment.

_____