# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3963
No. 05-4013

_____

| | | |
|---|---|---|
| Dale Helmig, | * | |
| | * | |
| Petitioner - Appellee/ | * | |
| Cross Appellant, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Michael Kemna, | * | |
| | * | |
| Respondent - Appellant/ | * | |
| Cross Appellee. | * | |

_____

Submitted: May 15, 2006
Filed: September 5, 2006

_____

Before LOKEN, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

LOKEN, Chief Judge.

In 1996, a jury convicted Dale Helmig of murdering his mother, Norma. He was sentenced to life in prison without the possibility of parol. The Missouri Court of Appeals affirmed the conviction, State v. Helmig, 950 S.W.2d 649 (Mo. App. 1997), and subsequently affirmed the denial of post-conviction relief, Helmig v. State, 42 S.W.3d 658 (Mo. App. 2001). Helmig petitioned for federal habeas relief in April 2002. In an amended petition filed many months later, he asserted a new claim that his constitutional rights were violated when jurors obtained and consulted during their

deliberations a Missouri highway map that was not introduced into evidence at trial. After an evidentiary hearing, the district court granted the writ on this ground and denied Helmig's remaining habeas claims. The State appeals the grant of the writ. Helmig cross appeals the denial of claims relating to his trial counsel's alleged conflict of interest and ineffective assistance. After careful review of the highway map issue on the merits,[1] we reverse the grant of the writ. We also reject the cross appeal and remand with instructions to deny Helmig's amended habeas petition.

## I. The Highway Map Claim

Because a jury's verdict must be based upon evidence presented at trial, it is inappropriate for a juror to view a crime scene without court permission or to bring extraneous materials to the jury's deliberations, even seemingly innocuous materials such as dictionaries and maps. In federal prosecutions, such "misconduct" gives rise to a presumption of prejudice that the government must rebut, or a new trial will be granted. See United States v. Hall, 116 F.3d 1253, 1255 (8th Cir. 1997), cert. denied, 522 U.S. 1140 (1998); United States v. Cheyenne, 855 F.2d 566, 568 (8th Cir. 1988). Here, the district court erred in applying the presumption of prejudice without taking into account that this is a habeas case.

In Murphy v. Florida, 421 U.S. 794, 797-99 (1975), the Supreme Court refused to apply to a state habeas case a presumption of jury prejudice it would apply in the exercise of its supervisory responsibility over federal criminal cases. Murphy would

---

[1]The State argues that we need not reach the merits because Helmig did not raise the highway map claim within the limitations period prescribed in 28 U.S.C. § 2244(d) and did not overcome his procedural default of the claim. In addition, the district court may have erred in not requiring Helmig to exhaust this claim in state court, though the State may have waived the exhaustion defense. See Duvall v. Purkett, 15 F.3d 745, 747 & n.4 (8th Cir.), cert. denied, 512 U.S. 1241 (1994). We put these procedural issues aside and decide the claim on its merits.

bar use of the presumption here, unless it is constitutionally mandated. The only Supreme Court habeas case cited by the district court, Turner v. Louisiana, 379 U.S. 466 (1965), involved a jury that was sequestered with deputy sheriffs who were also the State's key witnesses. Turner presumed prejudice from this non-evidentiary factor because it created a strong likelihood of improper influence. But Turner was not an "extraneous information" case. In more recent parlance, the defect in Turner would be described as "structural error." Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991). By contrast, a juror's exposure to extraneous information is not structural error. See Sherman v. Smith, 89 F.3d 1134, 1137-40 (4th Cir. 1996) (en banc), cert. denied, 519 U.S. 1091 (1997). Thus, we conclude that, to warrant relief on this ground, habeas petitioner Helmig must prove that the highway map "was both extraneous and prejudicial." Fullwood v. Lee, 290 F.3d 663, 682 (4th Cir. 2002), cert. denied, 537 U.S. 1120 (2003); accord Vigil v. Zavaras, 298 F.3d 935, 940 n.6 (10th Cir. 2002).

To determine whether the highway map was both extraneous and prejudicial, we must focus on relevant facts developed at Helmig's trial and at the evidentiary hearing held by the district court. The district court concluded that the map was prejudicial because it "provided jurors with specific facts by which to adjudge relative locations, distances, travel routes, and terrain," facts the court deemed crucial to the State's case and to Helmig's defenses, and because one juror "changed her vote" after viewing the map. Proper resolution of the issue requires a more discriminating review of the evidence.

Norma Helmig was last seen alive leaving a Jefferson City restaurant at 12:30 a.m. on July 29, 1993. An autopsy indicated that she died sometime between 1:00 a.m. and 6:00 a.m. that morning. The rivers in central Missouri experienced record flooding in July 1993. Norma lived in Linn, which is south of the Missouri River and east of Jefferson City. Though Helmig lived with his mother in Linn, he was working north of the Missouri River and checked into a motel in Fulton, Missouri, the evening

of July 28.  Fulton is north of the Missouri River and about forty-eight miles from Linn when the Highway 54 bridge in Jefferson City is open.  On the morning of July 28, a propane tank broke free in the flooded river and struck the Highway 54 bridge.  The bridge was closed, eliminating the major highway link between towns north and south of the Missouri River in the Jefferson City area.  But the bridge reopened at 8:00 p.m. on July 28.  Thus, it was physically possible for Helmig to leave the Fulton motel before midnight, drive to Linn, and kill his mother in the early morning hours of July 29.

Norma's body was found floating in the Osage River on August 1, with a concrete block secured to the body by a blue nylon rope.  The body was found 300 yards north of the Highway 50/63 bridge over the Osage, between Jefferson City and Linn and south of the Missouri River.  At trial, an expert witness testified that the Osage is flowing north at this point to join the Missouri River.  The State introduced an aerial photograph taken from south of the 50/63 bridge looking north up the Osage past where Norma's body was found.  The witness drew an arrow on the photo to show the direction of the river's flow.  Months later, Norma's purse was found just east of Jefferson City at a place where the Missouri River's flood waters had receded.  Another expert opined that the purse's location and condition indicated it had been thrown from the Highway 54 bridge during the floods.

The State's case against Helmig was built upon circumstantial evidence, including the circumstance that, following discovery of Norma's body, Helmig repeatedly "knew too much, too soon."  The State's theory was that Helmig left the motel in Fulton, suffocated Norma in her bed at home, tied the concrete block to her body, dropped the body from the Highway 50/63 bridge on the road back to Jefferson City, and later threw her purse from the Highway 54 bridge in Jefferson City.

Following a week-long trial, the jury began its deliberations.  Less than an hour later, the jury sent a request for various items of evidence, including the aerial photo

of the Highway 50/63 bridge. After conferring with counsel, the court granted the request. Twenty-five minutes later, the jury sent another request for the photo. After observing that a photo of the Highway 54 bridge had mistakenly been provided in response to the first request, the court ordered that the Highway 50/63 bridge photo be provided. The jury returned a guilty verdict less than three hours later.

Helmig first raised the highway map claim in federal court, explaining that the claim was first discovered when two jurors told a legal intern interviewing jurors in connection with other federal habeas issues that the jury obtained and reviewed a highway map during their deliberations. The district court held an evidentiary hearing. Juror Stanley Dahl testified that one female juror expressed doubt about Helmig's guilt, even after looking at the photos, because "she couldn't figure out or didn't understand how the rivers were, how they flowed in Missouri and what direction they flowed." A juror knocked on the outer door and requested a map, a state highway map was provided, and four to six jurors looked at the map. The female juror then "changed" her vote. Dahl testified that, unlike the Highway 50/63 bridge photo, "the map showed all three rivers and also showed like Highway 50 and 63."[2] He did not remember the doubting juror's name but described her in detail. He did not know if the request for a map was communicated to the court.

Juror Judy Wright testified that she recalled the map incident but did not look at the map because she was not sitting near the female juror. Wright testified that the map made it clearer to the female juror "how the roads and the rivers flowed" and "changed her doubts to surety." She did not recall who requested the map or whether the request was in writing. The legal intern, Mark Thomason, testified that he contacted almost all the jurors, met with five, and talked with one or two others on the phone. He was not asked if he identified the female juror with doubts. Retired bailiff

---

[2]The third river was undoubtedly the Maries, which flows into the Osage between the Highway 50/63 bridge and where Norma's body was found.

Robert Weymeyer testified that he and the sheriff were the only bailiffs at the trial. To the best of Weymeyer's knowledge, they did not "give anything to the jury that was not specifically requested by the jury and authorized by the judge."

1.  On this record, we conclude the district court erred in assuming the highway map was extraneous information. We agree Helmig provided sufficient evidence that a highway map that was not in evidence found its way into the jury room. But was the map "extraneous information"? Under Missouri law, "[j]udicial notice is taken of official highway maps." State v. Vincent, 582 S.W.2d 723, 725 (Mo. App. 1979). Given the substantial evidence in the record regarding highways and rivers and distances and terrain, the trial judge may well have decided, with or without consulting trial counsel, that the jury's request to look at a highway map was reasonable. If such a ruling were made, it might be error under state law, but it would undermine this federal constitutional claim. Helmig introduced no evidence that the jury's request was not conveyed to the court, nor did Helmig attempt to refute Bailiff Weymeyer's testimony that nothing was given to the jury without the court's permission. Thus, the claim suffers from a fundamental failure of proof.

2.  The district court also erred in permitting jurors Dahl and Wright to speculate as to the mental processes of the juror with doubts before and after she viewed the map. See Fed. R. Ev. 606(b) & Advisory Committee Notes. In a habeas case, if there is sufficient proof that the jury was improperly exposed to extraneous information, the court must determine on the basis of objective factors whether the information was prejudicial. See Vigil, 298 F.3d at 941; United States v. Blumeyer, 62 F.3d 1013, 1017 (8th Cir. 1995), cert. denied, 516 U.S. 1172 (1996).

3.  An objective review of the trial record augmented by the hearing testimony of jurors Dahl and Wright persuades us that the highway map, even if improperly obtained, was not *prejudicial* extraneous information. The basic geographic information conveyed by a highway map -- the relative location of towns, rivers, and

-6-

highways and the highway distances between towns -- was not contested at trial. The evidence established that Helmig was at a motel in Fulton at 10:45 p.m. the night Norma died. The Highway 54 bridge in Jefferson City reopened at 8:00 p.m. that night, so Helmig could have driven from Fulton and arrived at Norma's home in Linn during the early morning hours when Norma died. Thus, the critical issues at trial were whether Helmig had sufficient motive to kill his mother, and whether the State's circumstantial evidence proved beyond a reasonable doubt that he did kill his mother.

During deliberations, conscientious jurors would certainly have considered whether the State's theory was physically possible. One question would have been whether the flow of the Osage River would have moved a body deposited from the Highway 50/63 bridge to where Norma was found. The jury obviously considered this issue because it repeatedly requested the Highway 50/63 bridge photo. In these circumstances, what was the probable impact of a highway map on the deliberations?

A highway map typically shows the location of rivers but not the direction they flow. Of course, even a moderately knowledgeable Missourian might infer from a highway map that the Osage flowed north into the larger Missouri River east of Jefferson City and therefore would have carried Norma's body from the bridge to where it was found. But the trial evidence on this point was far more probative. Gary Howard, a retired conservation agent for the Missouri Department of Conservation, specifically testified that the Osage River flowed north from the Highway 50/63 bridge to where Norma's body was found some 300 yards down-river. Howard drew an arrow in that direction on the aerial photo; the jury requested and received that photo during its deliberations. The relevant information contained in the map was both cumulative and inferior to the trial evidence. Absent access to a highway map, a reasonable juror with doubt about what direction the Osage River was flowing would eventually have resolved her doubt by studying the aerial photo and by recalling agent Howard's testimony. Thus, Helmig has not proven prejudice because there is no "reasonable probability" that a reasonable juror would have reached a

different verdict without the map. Strickland v. Washington, 466 U.S. 668, 694 (1984); accord People v. Martinez, 82 Cal. App. 3d 1, 20-25 (Cal. App. 1978).

## II. The Cross Appeal

Helmig argues that the district court erred in rejecting two other claims. First, he argues that trial counsel labored under a conflict of interest because he also represented Helmig's father, Ted, in the probate of Norma's estate, and that the conflict adversely affected counsel's performance because he withheld from the jury evidence that implicated Ted as Norma's likely killer. This evidence included a restraining order Norma obtained against Ted, a contempt motion against Ted for violating that order, and Norma's handwritten notes stating that she feared Ted and carried a gun for her safety. Second, Helmig argues that trial counsel's assistance was constitutionally ineffective in failing to investigate and present evidence "that would have refuted virtually every aspect of the State's circumstantial case."

These federal habeas claims were rejected by the state courts on the merits. Therefore, Helmig must establish that the state court proceedings resulted in (1) "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1), (2); see Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). The state courts' findings of fact "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).

The Missouri Court of Appeals considered these issues in great detail. Regarding counsel's alleged conflict of interest, the Court of Appeals upheld the post-conviction trial court's conclusions that (i) any conflict was waived, (ii) counsel's performance was not impaired because he elicited unfavorable evidence about Ted Helmig at trial, and (iii) the additional evidence allegedly implicating Ted was not

admissible under Missouri law because it did not directly link him to the crime. 42 S.W.3d at 671-72, 679-80. These conclusions are supported by the record and consistent with Supreme Court decisions defining when an attorney's representation of multiple parties violates a defendant's Sixth Amendment rights. See Cuyler v. Sullivan, 446 U.S. 335, 348 (1980); United States v. Young, 315 F.3d 911, 914 n.5 (8th Cir.), cert. denied, 538 U.S. 1044 (2003). Thus, the state courts' decision was neither contrary to nor an unreasonable application of clearly established Sixth Amendment precedents.[3]

Regarding the remaining ineffective assistance claim, the Missouri Court of Appeals reviewed the trial record and the post-conviction evidentiary record in great detail and concluded that counsel conducted an investigation that was reasonable in scope and pursued a not unreasonable trial strategy. 42 S.W.3d at 666-77. The Court of Appeals agreed with the post-conviction trial court that counsel only failed to call witnesses who would not provide a defense, were not credible, or could not reasonably be located; and that counsel was reasonable in not attacking "each and every piece of evidence put forth by the state" and in not calling witnesses who would corroborate the State's theory. The state courts' decision was neither contrary to nor an unreasonable application of federal law, as established in Strickland v. Washington. See King v. Kemna, 266 F.3d 816 (8th Cir. 2001) (en banc), cert. denied, 535 U.S. 934 (2002); Cooley v. Nix, 738 F.2d 345, 347 (8th Cir.), cert. denied, 469 U.S. 1089 (1984). Helmig's assertion that the Missouri Court of Appeals misapplied Strickland's prejudice standard is without merit.

---

[3]Helmig argues that the Missouri evidentiary rule limiting evidence of third party guilt is unconstitutional under the Supreme Court's recent decision in Holmes v. South Carolina, 126 S. Ct. 1727 (2006). We disagree. The Court explicitly noted that Missouri's rule is "widely accepted" and was not challenged in Holmes. 126 S. Ct. at 1733, citing State v. Chaney, 967 S.W.2d 47, 55 (Mo. banc 1998).

### III.  Conclusion

The Writ of Habeas Corpus filed by the district court on September 26, 2005, is vacated, and the case is remanded with instructions to deny with prejudice Dale Helmig's amended petition for a writ of habeas corpus.

_____