**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  06a0718n.06**
**Filed:  October 4, 2006**

**No. 05-1419**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| VINCENT BRIDGES, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOHN CASON, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

Before:  COOK and MCKEAGUE, Circuit Judges; WILHOIT, District Judge[*]

COOK, Circuit Judge.  Vincent Bridges appeals the district court's denial of his petition for

a writ of habeas corpus under 28 U.S.C. § 2254 following his murder conviction in state court and

unsuccessful appeal and petition for relief from judgment.  We affirm.

I

Michigan tried Petitioner-Appellant Vincent Bridges and co-defendant Wilbert James Smith

concurrently for the shooting death of Edward Harris, empaneling separate juries for each co-

defendant to avoid any *Bruton* errors that could arise from a non-testifying co-defendant's statement

---

[*]The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District
of Kentucky, sitting by designation.

being introduced against the other co-defendant. *See Bruton v. United States*, 391 U.S. 123, 126 (1968).

While awaiting trial, Bridges wrote a letter to his niece which the jailers, pursuant to the jail's policies, intercepted and turned over to prosecutors in Bridges's case. At trial, Michigan introduced the letter against Bridges as a party admission.

Though three eyewitnesses (James Carl Parks, Lottie Russ, and Marguerite Russ) testified to co-defendant Smith's involvement in the shooting, none of them put Bridges on the scene. The victim's father, James Harris, testified that he did not see Bridges on the day of the shooting. But Charise Russ testified to seeing Bridges arrive at the scene in a blue truck, pursue and overtake the fleeing Edward Harris, stand over him, and shoot him several times. On cross-examination, the defense sought to undermine Charise's damaging testimony by focusing on the variance between her description of the shooter to police at the scene—"Big and fat, black male, 19 to 20 years of age, 5'–8" in height, very heavy build, dark complexion, wearing a thick brown coat with a black hood and a black cap reading 'West Side'"—and her description of Bridges in open court, where she conceded that she "would not say he's big and fat" and that she "would look at him and say he was in his 20s." But she steadfastly adhered to her testimony that Bridges was the shooter and was unwavering in her confidence about the accuracy of her identification of Bridges from a lineup.

Before trial, co-defendant Smith confessed to shooting Edward Harris in the leg and told police that Bridges was at the scene at the time of the shooting. Then at trial, despite an

understanding with the prosecution that Smith's confession could not be used as evidence against Bridges, Bridges's attorney arguably opened the door to its admission against Bridges. The court responded to the problem by allowing testimony, over objections by defense counsel, that Smith had given a statement placing Bridges in a blue pickup truck at the scene of the shooting. Ultimately, the jury found Bridges guilty of first-degree murder and possession of a firearm during the commission of a felony.

Bridges exhausted his appellate remedies in the Michigan courts without success and then petitioned for habeas relief in the district court under 28 U.S.C. § 2254. The district court rejected all of his claims and denied his habeas petition. On appeal Bridges now claims: (1) ineffective assistance of counsel that fostered the introduction of co-defendant Smith's otherwise-inadmissible hearsay confession implicating Bridges in the shooting, and (2) violation of his Fifth, Sixth, and Fourteenth Amendments rights by the admission of his jailhouse letter as substantive evidence.

II

In cases where the district court has denied habeas relief, this court reviews de novo the district court's conclusions of law. *Armstrong v. Morgan*, 372 F.3d 778, 781 (6th Cir. 2004). The district court's factual findings are reviewed for clear error. *Hill v. Hofbauer*, 337 F.3d 706, 710 (6th Cir. 2003).

Ineffective-Assistance-of-Counsel Claim

Bridges did not raise his ineffective-assistance claim on direct appeal in the state courts; he only raised it later in a petition for relief from judgment. Cason therefore contends that the claim is barred by the doctrine of procedural default. If the Michigan courts did not clearly and expressly invoke a state procedural bar in rejecting Bridges's ineffective-assistance claim, but instead ruled on its merits, then the doctrine of procedural default does not bar this court from reaching the claim's merits under *Strickland v. Washington*, 466 U.S. 668 (1984). *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

While the Michigan appellate courts upheld the trial court's rejection of Bridges's ineffective-assistance claim, it is unclear whether they did so on the merits or on the basis of a procedural bar. Yet, even if we determined that the doctrine of procedural default would otherwise bar our consideration of the merits of Bridges's claim, we would still have to consider whether the "cause and prejudice" test excused Bridges's default. That is, we would have to evaluate whether Bridges has shown sufficient cause for his failure to comply with the state procedural rule and actual prejudice arising from the default. *See Wainwright v. Sykes*, 433 U.S. 72, 84–85 (1977); *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000) (recognizing the vitality of the "cause and prejudice" test). Ineffective assistance of counsel, as defined by *Strickland*, is sufficient cause for non-compliance with a state procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Thus, whether the claim was procedurally defaulted in state court or not, Bridges is only entitled to habeas relief if he satisfies *Strickland*'s two-pronged test for ineffective assistance of

counsel. Satisfying the test requires Bridges to "show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). Because we determine that the admission of co-defendant Smith's confession did not prejudice the defense, we affirm the district court's denial of the ineffective-assistance claim, irrespective of any procedural default.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") adds an additional layer to this inquiry. Because Bridges filed his habeas petition after the effective date of AEDPA, that statute governs his eligibility for habeas relief. *See Lindh v. Murphy*, 521 U.S. 320 (1997); *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000). Under AEDPA,

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The upshot of AEDPA is that Bridges is entitled to habeas relief only "if the [Michigan] Supreme Court's decision rejecting his ineffective-assistance claim was either 'contrary to, or involved an unreasonable application of,' [*Strickland*]." *See Williams v. Taylor*, 529 U.S. 362, 391

(2000). In our judgment, the state courts' application of *Strickland* was not "unreasonable," so Bridges's ineffective-assistance claim fails.

The district court concluded that Bridges's counsel performed deficiently under *Strickland* because he opened the door, for no sound strategic reason, to the admission against Bridges of Smith's otherwise-inadmissible confession. *See Bruton*, 391 U.S. at 126 (holding that the introduction against the defendant of a non-testifying co-defendant's confession violated the defendant's rights under the Confrontation Clause). The district court did not specify whether the state courts' contrary conclusion on the "deficient performance" prong of *Strickland* was "unreasonable" under AEDPA. We need not decide this issue because we agree with the district court that the Michigan courts' conclusion that Bridges was not "prejudiced" by his counsel's alleged error was not "unreasonable." *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

In *Williams v. Taylor*, 529 U.S. at 393, the Court explained that *Strickland*'s "prejudice" prong is directed at whether the trial was fundamentally unreliable or unfair. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 393 n.17 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). Even if Bridges can show that trial counsel's actions deprived him of his Confrontation Clause rights under *Bruton*, 391 U.S. at 126, Bridges still must show "'a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *See Wiggins*, 539 U.S. at 534 (quoting *Strickland*, 466 U.S. at 694). In making this determination, the court reconsiders how the balance of evidence would have stood, but for counsel's errors. *See id.* ("In assessing prejudice [from counsel's errors at sentencing], we reweigh the evidence in aggravation against the totality of available mitigating evidence."); *Strickland*, 466 U.S. at 695–96. Applying this test, the Michigan courts' conclusion that Bridges was not "prejudiced" is not unreasonable. Co-defendant Smith's confession, which placed Bridges at the scene of the shooting, was neither the only evidence nor the strongest evidence of Bridges's guilt. Because of Charise Russ's unflinching eyewitness account of the shooting, the prosecution's reference to co-defendant Smith's hearsay confession was merely cumulative. The jury also reasonably could have evaluated Bridges's jailhouse letter as demonstrating consciousness of guilt. And evidence from the other eyewitnesses who simply identified Smith but not Bridges did not *exculpate* Bridges. *Strickland* acknowledges that conclusions supported by other properly admitted evidence may be unaffected by the introduction of evidence that, although improperly admitted, is cumulative. *See Strickland*, 466 U.S. at 695–96; *see also, e.g., Helmig v. Kemna*, ___ F.3d ___, 2006 WL 2528582, at *4 (8th Cir. Sept. 5, 2006); *Vieux v. Pepe*, 184 F.3d 59, 67 & n.6 (1st Cir. 1999); *Emery v. Johnson*, 139 F.3d 191, 197 (5th Cir. 1997). Therefore, we discern no error in the district court's denial of habeas relief on the ineffective-assistance claim.

Claims Related to the Jailhouse Letter

Bridges also argues on appeal that his rights under the Fifth, Sixth, and Fourteenth Amendments were violated by state authorities' interception—and the later use at trial—of a letter Bridges wrote to his niece while incarcerated pending trial. Bridges raised this claim on direct appeal, so procedural default is not an issue. We conclude that each of these claims lacks merit.

Fifth Amendment Claim

Bridges argues that the interception (without his knowledge) and use of his mail in a pending prosecution violated his Fifth Amendment right against involuntary self-incrimination. Bridges invokes the Supreme Court's statement in *Turner v. Safley*, 482 U.S. 78, 89 (1987), that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Bridges argues that "law enforcement"—i.e., the use of his intercepted mail in a pending prosecution—is not a legitimate penological purpose. We do not reach this question because Bridges fails to identify how the jail's practice "impinges on [his] constitutional rights." *Id.*

As the district court pointed out, the Supreme Court in *Stroud v. United States* held that a prison's practice of intercepting inmate mail and delivering it to prosecutors for use at trial did not violate the prisoner's Fourth or Fifth Amendment rights. 251 U.S. 15, 21–22 (1919) (citing *Weeks v. United States*, 232 U. S. 383 (1914)). Bridges neither distinguishes *Stroud* nor argues that he was somehow compelled to write a letter, and we thus find this claim meritless. *See, e.g.*, *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt County*, 542 U.S. 177, 189 (2004) ("The Fifth Amendment

prohibits only compelled testimony that is incriminating."); *Oregon v. Elstad*, 470 U.S. 298, 306–07 (1985) ("The Fifth Amendment prohibits use by the prosecution in its case in chief only of *compelled* testimony.").

Sixth Amendment Claim

In *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974), the Supreme Court noted that the inspection of inmate mail can implicate the Sixth Amendment. But aside from asserting that the interception and use at trial of the letter "[c]learly . . . impinged on Bridges' [sic] . . . Sixth Amendment right to the assistance of counsel," Bridges fails to develop this claim. "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)). In any event, the Sixth Amendment claim lacks merit: Bridges's letter was addressed to his niece, who, as far as the record reveals, had no attorney-client relationship with Bridges.

Fourteenth Amendment Claim

Bridges develops no independent claim under the Fourteenth Amendment, so any such claim is waived. *See Dillery*, 398 F.3d at 569 (quoting *Layne*, 192 F.3d at 566).

Bridges's Remaining Claim

Bridges's brief concludes with an argument not easily characterized as sounding in the jurisprudence of any of the constitutional provisions referenced in the brief; it reads: "An inmate has as much right to communicate with his family as anyone else. Likewise his family has as much right as anyone to testify against him and to explain what the inmate has said. Such is not the case here. The recipient of the letter did not testify." Whether the recipient testified matters not in evaluating Bridges's claim that he was forced to testify against himself (the only argument actually developed). The letter is admissible as a party admission. *See* Fed. R. Evid. 801(d)(2)(A).

III

For the foregoing reasons, the judgment of the district court is affirmed.